Paul KUKOWSKI and Lawrence
Kukowski, Plaintiffs and
Appellants,

v.

SIMONSON FARM, INC., a corporation
under the North Dakota Corporation
Act; Ervin Simonson, and John Simonson, Defendants and Appellees.

Civ. No. 930081.

Supreme Court of North Dakota.

Oct. 26, 1993.

Ronald A. Reichert of Reichert, Buresh, Herauf & Ficek, Dickinson, for plaintiffs and appellants.

Glen R. Bruhschwein of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellees.

SANDSTROM, Justice.

Paul and Lawrence Kukowski appeal from the district court's entry of summary judgment dismissing their negligence claim against Simonson Farm, Inc., Ervin Simonson, and John Simonson. The Kukowskis allege their property was damaged by the Simonsons' use of a combine to control weeds on the Simonsons' property. The district court granted the Simonsons' second motion for summary judgment, holding the Simonsons owed no duty to the Kukowskis concerning the spread of naturally occurring weeds, and that the Kukowskis failed to present competent evidence of damages to support their claim. We reverse, concluding the Simonsons owed the Kukowskis a duty not to combine the weeds on their property in a negligent manner, and the Kukowskis presented enough evidence to create a fact issue as to damages.

I

The Kukowskis and Simonsons are farmers in Golden Valley County. In 1989, John Simonson leased two quarters of land from Simonson Farm, Inc. John Simonson placed the two quarters of land into the Conservation Reserve Program. The land was seeded to grass and a weed control chemical was applied. Over the course of the growing season, a stand of kochia and Russian thistle grew on the Conservation Reserve Program acreage. In late October of 1989, after freeze-up, Ervin Simonson, at the request of John Simonson, combined the kochia and Russian thistle in an attempt to control the weeds.

The Kukowskis began this action, alleging the Simonsons' combine broke-off the weeds in an unnatural manner, allowing them to blow onto their property, causing damage. Further, the Kukowskis allege the use of the combine "branded" the weeds, making them readily identifiable as emanating from the Simonsons' land. The Kukowskis claim damages in the amount of $80,000 for clean-up costs, reduced crop yields, and costs for present and future weed control.

The Simonsons twice moved for summary judgment. In response to the first motion, the district court concluded that under *Langer v. Goode*, 21 N.D. 462, 131 N.W. 258 (1911), the Simonsons owed no duty to the Kukowskis concerning weeds growing on the Simonsons' land. Additionally, the court noted the Kukowskis had failed to support their damage claims with competent, admissible evidence. The court, however, denied the summary judgment motion as premature because it believed the Kukowskis' complaint may have alleged facts to support a cause of action for nuisance, which neither party had briefed.

The Simonsons again moved for summary judgment. Each party submitted briefs on the issues of nuisance, and whether the Kukowskis could be considered third party beneficiaries of the Conservation Reserve Program contract between John Simonson and the United States Department of Agriculture.

The district court granted the Simonsons' second motion for summary judgment, holding:

"For Kukowskis to prevail on either negligence or public nuisance, they must establish a duty owed to them by Simonsons, a breach or omission of it, and resulting injury proximately caused by such breach or omission. For this duty, Kukowskis rely on Simonsons' contract with the United States Department of Agriculture, but the contract only obligates Simonsons to control weeds to establish a

grass stand. This contract imposes no greater duty on Simonsons than any other farmer would have to third parties, and Kukowskis cite no authority imposing a general duty on farmers to control weeds. Also, Kukowskis offer no evidence that they were injured, much less that such injury was proximately caused by a breach of duty or omission by Simonsons."

## II

■ At common law, landowners were not liable for the natural spread of weeds from their property to their neighbors' property. Landowners, however, could be held liable if the spread of weeds resulted from some independent act of negligence. *See* 2 Harl, *Agricultural Law*, § 1102. This rule is partially reflected in this Court's opinion in *Langer v. Goode*.

In *Langer*, the plaintiff sought recovery for damages caused by the defendant's alleged failure to destroy wild mustard growing on his farm. Recognizing the common law rule barred his recovery, the plaintiff claimed the defendant had a statutory duty to destroy the noxious mustard weeds. This Court held, based on Section 2086, Revised Codes of 1905, the defendant had no statutory duty to destroy the wild mustard because the county commission had not set the time and manner of destroying the weeds, as required by the statute. *Langer*, 21 N.D. at 464, 131 N.W. at 260–61. *Langer* also reiterated the common law rule that there is no duty "as between adjoining occupiers to cut the thistles which are the natural growth of the soil." *Langer*, 21 N.D. at 467, 131 N.W. at 260 (citations omitted).

■ The district court misapplied *Langer* to the facts of this case. Here the legal issue is not whether the Simonsons were under a duty to cut the weeds, but rather, whether the Simonsons, after deciding to attempt to destroy the weeds, owed the Kukowskis a duty of care. We hold there is a duty to use ordinary care when attempting to control or remove weeds. The Simonsons owed the Kukowskis this duty when attempting to control the weeds growing on their property.

This result is consistent with the common law rule partially announced in *Langer*, and which was fully explained in *Vance v. Southern Kansas Ry. Co. of Texas*, 152 S.W. 743, 745 (Texas App.1912):

"As we understand the law, there was no cause of action in favor of contiguous landowners against a railroad permitting Russian thistles to grow and go to seed.... The mere failure to destroy thistles and prevent their going to seed within itself is not actionable.... In order to make a railroad liable, *there must have been some independent or active negligence on its part in conveying the seed upon the adjacent land to make it liable.*"

(Citations omitted; emphasis added.) *See also Merriam v. McConnell*, 31 Ill.App.2d 241, 246, 175 N.E.2d 293, 296 (1961):

"Thus it will be seen that a nuisance cannot arise from the neglect of one to remove that which exists or arises from purely natural causes. But, when the result is traceable to artificial causes, or where the hand of man has, in any essential measure, contributed thereto, the person committing the wrongful act cannot excuse himself from liability upon the ground that natural causes conspired with his act to produce the ill results." (Citations omitted.)

■ Our decision does not create a new duty for farmers to control the spread of weeds. It recognizes farmers must exercise ordinary care when actively working the land. Ordinary care is the care an ordinary, prudent, and careful person would use in similar circumstances. *Thomas v. City of Devils Lake*, 143 N.W.2d 718, 720 (N.D.1966); *Sheets v. Pendergrast*, 106 N.W.2d 1, 4 (N.D. 1960).

## III

The standard of review on a motion for summary judgment is clear:

"Under Rule 56, N.D.R.Civ.P., a summary judgment should be granted only if it appears that there are no issues of material fact or any conflicting inferences which may be drawn from those facts. The party seeking summary judgment has the burden to clearly demonstrate that there is no genuine issue of material fact. In consid-

ering a motion for summary judgment, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence to determine whether summary judgment is appropriate. The court must view the evidence in a light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. Courts must also consider the substantive standard of proof at trial when ruling on a motion for summary judgment."

*Ellingson v. Knudson,* 498 N.W.2d 814, 817 (N.D.1993) (citations omitted).

■ Based on the pleadings, depositions, and affidavits in the record, summary judgment was not appropriate in this case. As the moving party, the Simonsons had the burden to clearly demonstrate there were no material fact issues. The Simonsons have not met their burden.

■ In support of their first motion for summary judgment, the Simonsons explained:

"The Plaintiffs allege that during the 1989 growing season, Kochia ... and ... Russian thistle ... grew on Defendant's [sic] property ... and that said kochia and Russian thistle blew off said property onto Plaintiff's [sic] property causing damage. Although Defendants vigorously deny those allegations, *for purposes of this Motion the Court may accept them as undisputed facts.*" (Emphasis added.)

The Simonsons then argued they were under no legal duty to control the spread of naturally occurring weeds. Similarly, the Simonsons' brief in support of their second motion for summary judgment also is devoted to the argument they were under no legal duty to the Kukowskis. Nowhere in either of their briefs did the Simonsons challenge the Kukowskis assertions of damage from "branded" weeds.

In response to the Simonsons' first motion for summary judgment, the Kukowskis presented the affidavit of their expert, Marlin Hinrichs, an Area Agronomy Specialist with the North Dakota State University Extension Service. Hinrichs said:

"I am familiar with the facts in this case. Combining is not a method of weed control. The use of a combine in November to clip the Kochia and Russian Thistle will cause these weeds to spread more than they would naturally."

The Kukowskis also submitted the 28-page deposition of John Simonson, in which he acknowledges that, at his request, his father, Ervin Simonson, combined the weeds.

In the Kukowskis' brief against the second motion for summary judgment, the Kukowskis' counsel explained:

"We have asked counsel for the Defendants to file the original depositions of Paul Kukowski and Lawrence Kukowski which show the extent and the nature of the negligence in response to the Motion for Summary Judgment."

A review of the two depositions filed with the court reveals Paul and Lawrence Kukowski testified the "branded" weeds damaged their fences, and they had experienced increased weed growth on their property.

A fact issue exists as to whether the Kukowskis were damaged by the Simonsons' use of a combine to destroy weeds on their property. The Simonsons failed to present any evidence countering the Kukowskis' claimed injury, and the Simonsons admitted, for the purposes of their summary judgment motion, damages could be assumed. Further, the Kukowskis raise an inference of damages through the affidavit of their expert and the deposition of John Simonson.

The Simonsons owed a duty of ordinary care in their weed control efforts. Genuine issues of material fact exist as to the breach of that duty, causation and damages. The judgment of the district court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

NEUMANN, LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

I write separately to caution that the conclusion set forth in the majority opinion should not, and I believe does not, require or even encourage a reexamination of accepted farming practices used to control weeds in order to determine whether or not they might constitute negligence. Nor, in a state so dependent on agriculture as North Dakota, should we discourage innovative but as yet unproven practices to control weeds. I hope this opinion is not read to discourage experimentation and innovation.

My recollection is that the farmer who had the blackest summer fallow was considered to be the better farmer because that farmer left no weeds to use the moisture. But such a practice left the land exposed to soil erosion, particularly from the wind, as we later understood. The farmer who cultivated so as to leave the most "trash" whether stubble, weeds, or both, on the surface was considered to be the better farmer, for doing so prevented the soil erosion which causes substantial permanent damage to our greatest material resource. Could that practice, which involved more than simply letting weeds grow, be challenged because it involved an "independent act"? I do not believe so.

Today, with the "no-till" drills, cultivation to destroy weeds is considered unnecessary and even harmful. Chemical spray is used to destroy weeds. Is such a practice now subject to challenge under the majority opinion? I trust it is not.

Nevertheless, I agree with the majority opinion that *Langer v. Goode*, 21 N.D. 462, 131 N.W. 258 (1911), simply held, in accordance with common law, that "no ... duty devolves upon any person to destroy ... nuisance weeds upon the land he owns or occupies as will make him liable in damages for failure to destroy...." *Langer*, 131 N.W. at 258, syllabus by the Court. The decision does not, from the facts of the case, apply to affirmative acts of the defendant.

The action here alleged is for the affirmative act taken to destroy the kochia and thistle so as to cause them to blow onto Kukowski's property in a quantity greater than would accrue if the weeds simply had been allowed to grow on Simonson's land. The state of the record for purposes of summary judgment is that combining in November is not a method of weed control, recognized or unrecognized.

Despite my concern, I also agree that there is a duty not to cause weeds to spread to others land by an act of negligence independent of the natural growth and spread of weeds. I therefore concur with the majority that summary judgment was improper insofar as it was premised on a lack of duty.