(935 P.2d 1063)

No. 76,257

IVAN D. KRUG and ALETA CRABTREE, *Appellants*, v. JOHN KORIEL, *Appellee*.

—

Opinion filed April 4, 1997.

*Robert P. Mahan*, of Dighton, for the appellants.

*Richard A. Boeckman*, of Keenan & Boeckman Law Firm, P.A., of Great Bend, for the appellee.

Before BRAZIL, C.J., GERNON and PIERRON, JJ.

PIERRON, J.: Ivan D. Krug and Aleta Crabtree (hereinafter Krug) appeal the district court's granting of summary judgment in favor of John Koriel. The court held that Koriel had no legal duty to control the volunteer wheat on his land to prevent the spread of the wheat streak mosaic virus and, in any event, there was insufficient evidence to establish that Koriel's fields were the source of the infestation.

Krug owns the northeast quarter of Section 17, Township 18 South, Range 18 West of the 6th P.M., Rush County. Crabtree owns the southwest quarter of Section 5, Township 18 South, Range 18 West of the 6th P.M., Rush County. Krug is the tenant of the Crabtree property.

Koriel owns the south half of the southeast quarter of Section 8, Township 18 South, Range 18 West of the 6th P.M., and the southeast quarter of Section 6, Township 18 South, Range 18 West of the 6th P.M., Rush County. In relation to one another, Koriel's property is located across the road north from Krug's property and across the road west from Crabtree's property.

The villain in this controversy is the wheat streak mosaic virus. Wheat streak mosaic is caused by a rod-shaped virus which is car-

ried by the wheat curl mite. The mite is so named because of its feeding pattern which tends to cause the wheat leaf to curl or roll along the edges. The mites depend on the wind to carry them to new plants. Primary infections usually develop along the border of a field. As time progresses, the wind moves the mites farther into the wheat field, eventually infecting the whole field.

The trial court was presented evidence by the Cooperative Extension Service of Kansas State University which indicated that in most cases infestation from wheat streak mosaic can be traced to a nearby field of volunteer wheat. Volunteer wheat sprouts from grain left on the ground after harvest. Volunteer wheat is the major source of wheat curl mite buildup. The wheat curl mite can travel up to a half a mile in the wind.

The Extension Service encourages control of volunteer wheat:

"Even if you control your volunteer, diseases and insects from your neighbor's volunteer may still attack your wheat. Like the old saying goes, one bad apple can spoil the whole barrel. That's why neighbor cooperation in volunteer control is the key to success. If certain neighbors don't have time to control their volunteer, perhaps they would be willing to let you do it and cover your fuel bill."

Koriel does not dispute there was volunteer wheat growing on his land, but he also stated there was volunteer wheat on every other parcel of land in the area.

In an affidavit submitted by Krug, he explained how the road between his property and Koriel's was only 22 feet wide and the wheat crop on this land was damaged in excess of 50% by wheat streak mosaic. Additionally, he explained how the road between Crabtree's property and Koriel's property was only 28 feet wide and 12.5 acres of Crabtree's property suffered wheat streak mosaic damage. Krug surmised the wheat crop on other land he farmed was excellent because the neighboring properties were properly sprayed or tilled for control of the virus. Krug claimed the only source of wheat streak mosaic virus which caused his wheat to be damaged came from Koriel's land since no other neighbors had volunteer wheat.

The volunteer wheat on Koriel's land was never tested for the mosaic virus because Koriel had plowed it under in early spring 1993.

Krug filed suit against Koriel claiming wheat streak mosaic virus from Koriel's land blew on to their land, causing damage to his 1993 wheat crop in the amount of $6,116. Krug alleged several theories of liability, including nuisance, strict liability, negligence, trespass, and res ipsa loquitur.

Koriel filed a motion for summary judgment. The district court granted Koriel's motion and specifically adopted the arguments and authorities submitted by Koriel. At the hearing on the summary judgment motion, the district court found: (1) The fields in a 12 square-mile radius to the fields at issue may or may not have had wheat streak mosaic; (2) wheat streak mosaic can occur in wheat that is not volunteer; and (3) Koriel had no legal duty to control the volunteer wheat on his property and was not liable for any damage that may have occurred from not doing so. In other words, the trial court found there was a failure of proof and no viable theory of legal liability.

This court's standard for review of cases decided on summary judgment is well established:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

"Summary judgment is proper where the only question or questions presented are questions of law. [Citation omitted.]" *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993); see *Bradley v. Board of Butler County Comm'rs*, 20 Kan. App. 2d 602, 890 P.2d 1228 (1995).

Krug first argues the district court erroneously decided Koriel did not have a common-law duty to control the wheat streak mosaic virus on his property.

Whether a duty exists in a particular case is a question of law. Whether the duty has been breached is a question of fact. "This court's review of conclusions of law is unlimited." *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

Krug cites a general principle that the common law should not be static, but should have the capacity to grow:

> "One of the basic characteristics of the common law is that it is not static, but is endowed with vitality and a capacity to grow. It never becomes permanently crystallized but changes and adjusts from time to time to new developments in social and economic life to meet the changing needs of a complex society. In a sense, it must be behind the times, because before the law changes or develops new rules, the conditions requiring the modification must acquire some degree of permanency." *Hoffman v. Dautel*, 189 Kan. 165, 168, 368 P.2d 57 (1962).

Krug contends this court needs to plow new ground. He requests a ruling that Koriel has a common-law duty to control his volunteer wheat and not allow wheat streak mosaic virus to develop and migrate to other fields. He first cites 1 Am. Jur. 2d, Adjoining Landowners § 12, which states:

> "The principles of the law of negligence ordinarily enter into the determination of the question of the reasonable use of property. Private owners are liable for damages inflicted upon persons in or near their premises by negligence of the owner in connection with his property, though the injury is inflicted outside and beyond the limits of his property. The proper test of liability of a possessor of land is whether in the management of his property he has acted as a reasonable person in view of the probability of injury to others.
>
> ". . . Whether there was negligence is generally a jury question."

Krug also cites 51C C.J.S., Landlord & Tenant § 355(a), which states:

> "A tenant has a cause of action for the destruction of, or injury to, his crops, caused by the wrongful act of negligence of a third person, even though he may be held to his landlord or some other person for an interest in the crop.
>
> . . . .
>
> "In an action by the tenant against a third person for damages for trespass upon the leased property, or for injury to his crops, it is not necessary to make the landlord a party thereto."

Krug also cites numerous cases to support the contention of Koriel's duty. Koriel argues, correctly we believe, that all of Krug's cited authorities are factually distinguishable and not sufficiently on point.

For instance, in *Curtis O. Griess & Sons v. Farm Bureau Ins. Co*, 247 Neb. 526, 528 N.W.2d 329 (1995), the facts were undisputed that Griess' swine were infected by a swine virus from a nearby quarantine of infected swine. The insurance company did not dispute that the virus was transmitted to the farmer's swine by a windstorm. The insurance company denied coverage because it was the virus, not the windstorm (a covered peril under the policy), that caused the damage to the farmer's swine. The *Griess* court held:

> "When windborne materials occasion a loss, the loss is considered the direct result of a windstorm, because the windstorm is considered the dominant, efficient cause which set the concurring cause in motion."

> "Where a virus has been transmitted by means of a covered peril, the covered peril is the proximate cause of the loss." 247 Neb. 527, Syl. ¶¶ 9, 10.

Krug argues the swine virus in *Griess* is comparable to the wheat streak mosaic virus here. Koriel points out that causation was undisputed in *Griess* and the case had nothing to do with whether the *owner* of the quarantined swine had a duty.

Krug also cites *Mull v. Boyle*, 102 Kan. 579, 580-81, 171 Pac. 652 (1918), where the court held that where a statute permitted rent in the form of a share of the crop, "the landlord has such an ownership in the growing crop that he may maintain an action for the value of his share against a third person who has negligently destroyed it."

Krug also notes that in *Binder v. Perkins*, 213 Kan. 365, 516 P.2d 1012 (1973), the defendant, an aerial crop sprayer, was held liable for negligent application of herbicide. The defendant sprayed the plaintiff's neighbor's field, and the spray drifted to the plaintiff's property and severely damaged his alfalfa crop. The court found the defendant guilty of negligence since he knew or should have known the position of plaintiff's alfalfa field, about the possibility of a wind shift, and that the herbicide fumes could reasonably be expected to escape for 2 days after application. 213 Kan. at 369.

Koriel again correctly argues that *Mull* and *Binder* did not deal with a duty owed by an adjacent landowner.

Krug cites *Kukowski v. Simonson Farm, Inc.*, 507 N.W.2d 68 (N.D. 1993), in which the defendant's land had a stand of kochia and Russian thistle growing on it. In an attempt to control the weeds, the defendant combined the kochia and Russian thistle. The plaintiff filed suit against the defendant claiming their property was damaged by the defendant's use of a combine to control the weeds. Ultimately, the court stated the defendant owed a duty of ordinary care in their weed control efforts. 507 N.W.2d at 71.

Koriel correctly points out the weed cases would be controlled by Kansas' noxious weeds statutes, K.S.A. 2-1314 *et seq. Kukowski* does not stand for the proposition that volunteer wheat could be considered a weed. A handful of Kansas cases have mentioned volunteer wheat, but never in this context.

In order to successfully oppose a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. The district court decided that Krug failed to submit any authority supporting the proposition that Koriel had a duty to control the volunteer wheat on his property. We agree.

The district court correctly determined that volunteer wheat was not listed as a noxious weed under K.S.A. 2-1314. If classified as a noxious weed, Koriel would have a "duty . . . to control the spread of and to eradicate all weeds declared by legislative action to be noxious." K.S.A. 2-1314.

Krug fails to present any statutory or regulatory scheme or case law which requires a farmer to control volunteer wheat. We acknowledge, as does Koriel, the evidence from the Extension Service that volunteer wheat is a major host for the mite containing the wheat streak mosaic virus and that good neighbors control their volunteer wheat. Koriel contends a possible moral duty to control volunteer wheat does not rise to the level of a legal duty in the absence of a statute, regulation, or case holding otherwise.

Krug candidly admitted at oral argument that he has not found any such specific legal obligation. Neither has this court found such an obligation, either in this state or in any other state. We believe

a requirement of the nature suggested by Krug should come from a legislative body as part of the state's comprehensive regulation of farming procedures.

Industrious counsel for Krug also argues Krug has viable claims for nuisance, trespass, strict liability, and res ipsa loquitur. Krug cites several cases and annotations supporting this theory, none of which are factually applicable.

Based upon the above analysis, we find there is no common-law duty in Kansas for landowners to control volunteer wheat for the purpose of preventing outbreaks of wheat streak mosaic.

The district court also found there was insufficient evidence to support a finding that the complained-of infestation came from Koriel's field. Even if it could be shown that the evidence might reasonably support a finding that Koriel's field was the source of the infestation, our decision on the lack of a breach of a legally binding duty makes the question academic.

Affirmed.