2003 SD 100

**Neil E. COLLINS and Sharon K. Collins, Plaintiffs and Appellants,**

v.

**James BARKER, Defendant and Appellee.**

No. 22524.

Supreme Court of South Dakota.

Considered on Briefs March 24, 2003.

Decided Aug. 13, 2003.

Kenneth E. Barker, John W. Burke of Barker, Wilson, Reynolds & Burke, Belle Fourche, South Dakota, Attorneys for plaintiffs and appellants.

Gregory J. Erlandson of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorneys for defendant and appellee.

MEIERHENRY, Justice

[¶ 1.] Neil E. Collins and Sharon K. Collins (Collins) brought an action against James Barker (Barker) claiming that weeds from his adjacent land blew onto their property causing damage to their fences, water supply and tree belt. Collins' claim was based on theories of negligence, nuisance and trespass. The trial court ruled in favor of Barker. Collins appeal. We reverse.

### Facts

[¶ 2.] Collins own a 160–acre farm in Butte County, South Dakota. The farm is surrounded on all sides by Barker's property. The Collins reside on the property and raise horses for commercial purposes. Since their purchase of the property in 1989, they made numerous improvements to the land by landscaping, repairing buildings, building fences, and completing a water delivery system.

[¶ 3.] Barker, an absentee landlord, lived in California until 1993 when he moved to a residence between Spearfish and Belle Fourche, South Dakota. Barker usually checked the land twice a year leaving the land maintenance and care to the tenant who rented the land. Barker placed a portion of the land in the Conservation Reserve Program (CRP). The portion in CRP was directly up-wind from the Collins' property. In 1992 and again in 1998 weeds traveled from Barker's land to the Collins' property.

[¶ 4.] In 1992, the weeds blew onto Collins' property in such large quantities that they completely filled the tree rows and fences. The weeds also accumulated on the dugout and dams from which Collins got their water supply. The decay and fermentation of the weeds rendered the water unfit for livestock or domestic use. As a result of the water contamination, Collins had to haul water for all their needs.

[¶ 5.] In 1998, a second weed infestation again filled up Collins' tree rows, fences, dams and dugout. Barker indicated he did nothing to control the weeds prior to 1998 but believed he had complied with the CRP requirements. Barker sprayed for weeds in the spring of 1998 but was unsuccessful in curbing the growth. Collins complained about Barker's large weed infestation to the federal agency administering the CRP program. In October of 1998, the agency notified Barker by letter that his CRP acres "were badly infested with weeds which [were] blowing into the fences and ponds to the east." The agency advised him that he was responsible for controlling the weeds under the CRP contract and regulations. The agency also required him to take care of the weeds that already had blown onto Collins' property.

[¶ 6.] After receiving the letter, Barker and his cousin removed, stacked and compacted the weeds which had accumulated along a portion of Collins' fence. Before Barker finished, he was forced to stop because of strong winds. Barker did nothing further with the stacked weeds until months later. Collins claimed most of the weeds blew back onto their property.

[¶ 7.] Collins also contacted the Butte County Weed and Pest Control Board whose function is to identify noxious weeds growing in the county and enforce their eradication. The weed board supervisor identified all of the weeds as kochia.[1] Kochia was not classified as a noxious weed on the state or county list of noxious weeds.

[¶ 8.] Collins brought an action for nuisance, trespass, and negligence against Barker. The matter was tried to the court. The trial court determined that a landowner has no duty to control non-noxious weeds. The trial court conclusions of law stated:

1. There is "no common-law duty on a property owner to destroy noxious weeds on his land which are the natural outgrowth of the soil." (citation omitted)

2. South Dakota has established a statutory scheme (S.D.C.L. ch. 38–22) ("Weed Act") which modified the common-law and establishes a duty on landowners to control certain designated "noxious" weeds.

3. South Dakota's Weed Act governs Collins' negligence, nuisance, and trespass claims. As such, weed cases are controlled by the noxious weed statutes and there is no "statutory or regulatory scheme or case law which requires a farmer to control" a weed that has not been "declared by legislative action to be noxious." (citation omitted)

4. There is no authority imposing a general duty on farmers to control weeds. (citation omitted). However, once a farmer attempts to remedy a weed problem, he must use ordinary care and can be liable for an independent act of negligence if his methods are unreasonable.

5. A ruling in favor of Collins on any of their claims based upon non-noxious weeds would be an impermissible judicial expansion of the Weed Act.

The trial court in its findings of fact found that Barker had used reasonable efforts and exercised ordinary care in his efforts to control the weeds. The court ruled in favor of Barker on all claims. Collins ap-

---

1. Kochia is an annual plant, reproducing by seed. It is a common drought-resistant weed growing in fields, rangeland, pastures, and disturbed sites. In the fall, stems often break from the root, tumbling with the wind to scatter large amounts of seed. The plant is one to seven feet in height with highly branched, light green stems. South Dakota Department of Agriculture, South Dakota Weeds 78 (rev. ed.2002).

peals the nuisance claim raising the following issue on appeal:

**Whether, under the facts of this case, Collins can maintain a claim against Barker based on a nuisance theory for damage to their water source and property caused by Barker's actions and conduct concerning non-noxious weeds originating from his property.**

## STANDARD OF REVIEW

[¶ 9.] A trial court's conclusions of law are reviewed de novo. *Hofeldt v. Mehling*, 2003 SD 25, ¶ 9, 658 N.W.2d 783, 786 (citations omitted). "The determination of whether a duty exists is a question of law for the court." *Gilbert v. United Nat. Bank*, 436 N.W.2d 23, 27 (S.D.1989). Similarly, "the construction of a statute and its application to the case at hand presents a question of law...." *Shevling v. Butte County Bd. of Com'rs*, 1999 SD 88, ¶ 12, 596 N.W.2d 728, 730. "The existence of a duty and the scope of that duty are questions of law for a court to decide." *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 839 (S.D.1990) (*citing Lalley v. Safway Steel Scaffolds, Inc.*, 364 N.W.2d 139 (S.D.1985); *Erickson v. Lavielle*, 368 N.W.2d 624, 627 (S.D.1985)). Thus, we may review the trial court's conclusion de novo.

## DECISION

[¶ 10.] In determining whether a landowner has a duty to control non-noxious weeds, the trial court relied on the South Dakota Weed Act (SDCL 38–22). The trial court concluded that under common law, a landowner has no duty to control the natural spread of weeds from the landowner's property to neighboring property. The trial court concluded that the weed act modified the common law by imposing a statutory duty which requires landowners to control noxious weeds growing on their land. Collins asserts a landowner has a duty to control non-noxious weeds, i.e. kochia and may be held liable under a common law and statutory nuisance theory. We agree.

[¶ 11.] The South Dakota Weed Act defines when weeds become a public nuisance. SDCL 38–22–16. Under the act, only noxious weeds constitute a public nuisance. The act requires the landowner to eradicate noxious weeds. If the landowner fails to do so, the county weed board may proceed at the landowner's expense. SDCL 38–22–23.14. Nothing in the weed act forecloses Collins from bringing a private nuisance action for damages caused by a landowner's failure to control non-noxious weeds.

[¶ 12.] In *Johnson v. Drysdale*, this Court considered whether a nuisance "includes consequences arising from the otherwise lawful use of property." 66 S.D. 436, 285 N.W. 301, 302 (1939). Although this 1939 case dealt with the issue of whether a horse barn in the middle of a residential area could be considered a nuisance, the underlying principles are still the same and are based upon a rule of reason.

Through the operation of this rule of reason, not only is a balance maintained between the right to the enjoyment of property on the one hand and the right to use property on the other, ... It is in the field of unreasonable use that the law of nuisance is operative.

*Id.* at 304.

[¶ 13.] The North Dakota Supreme Court, in a case which dealt with the right to bring a private nuisance claim against a farmer for the spread of weeds onto neighboring land, held that "there is a duty to use ordinary care when attempting to control or remove weeds." *Kukowski v. Simonson Farm, Inc.*, 507 N.W.2d 68, 70

(N.D.1993). The court stated that the landowner's duty of care in controlling weeds is "the care an ordinary, prudent, and careful person would use in similar circumstances." *Id.* at 70. Further, the court noted: "Our decision does not create a new duty for farmers to control the spread of weeds. It recognizes farmers must exercise ordinary care when actively working the land." *Id.* at 70 (citations omitted).

[¶ 14.] Although landowners may not be liable for the "natural" spread of weeds to their neighbor's property at common law, the allegations against Barker go far beyond what would be considered a "natural" proliferation of weeds. Under the law of nuisance, landowners have a duty to exercise ordinary care. The duty of care is that which an ordinary, prudent, and careful landowner would use in similar circumstances taking into consideration generally accepted agricultural and management practices.

[¶ 15.] The duty to use ordinary care to prevent the spread of non-noxious weeds only applies to weeds that grow or spread for reasons other than the natural condition of the land. As the North Dakota Supreme Court recognized:

[A] nuisance cannot arise from the neglect of one to remove that which exists or arises from purely natural causes. But, when the result is traceable to artificial causes, or where the hand of man has, in any essential measure, contributed thereto, the person committing the wrongful act cannot excuse himself from liability upon the ground that natural causes conspired with his act to produce the ill results.

*Id.* at 70. (further citations omitted). This rule is in accord with the general Restatement rule that "a possessor of land is not liable to persons outside the land for a nuisance resulting solely from a natural condition of the land." Restatement (Second) of Torts § 840(1) (1979). The term "natural condition" of land, as it applies to weeds, means:

[A] condition that is not in any way the result of human activity. The term comprehends soil that has not been cultivated, graded or otherwise disturbed; ... weeds and other vegetation on land that has not been made artificially receptive to it by act of man; .... The term does not comprehend conditions that would not have arisen but for the effect of human activity even though the conditions immediately resulting from the activity were harmless in themselves and the harmful condition has arisen through the subsequent operation of natural forces. Thus ... vegetation that grows on land only because it has been plowed is not a natural condition although it has not been planted or cultivated by anyone.

*Id.*, cmt. a.

[¶ 16.] Barker does have a duty to conduct his farming practice as it relates to weed control in a manner that does not create a nuisance. Consequently, a claim for nuisance may be brought under statutory or common law nuisance theories. A statutory claim for nuisance arises under SDCL 21–10–1. The statutory definition of nuisance is as follows:

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

(1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;

(2) Offends decency;

(3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, ca-

nal, or basin, or any public park, square, street, or highway;

(4) In any way renders other persons insecure in life, or in the use of property.

SDCL 21–10–1.

[¶ 17.] A common law theory of nuisance may also apply. The elements of a common law private nuisance are set out in the Restatement (Second) of Torts § 822 (1979) and recognized by this Court in *Kuper v. Lincoln–Union Elec. Co.*, 1996 SD 145, 557 N.W.2d 748. Conduct which gives rise to liability for a private nuisance under a common law theory is as follows:

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Restatement (Second) of Torts § 822 (1979). The conduct making an actor liable "may consist of (a) an act; or (b) failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate ... the invasion of the private interest." Restatement (Second) of Torts § 824 (1979). An actor's invasion is considered "intentional if the actor (a) acts for the purpose of causing it, or (b) knows that it is resulting or is substantially certain to result from his conduct." Restatement (Second) of Torts § 825 (1979).

[¶ 18.] We have concluded that the trial court erred in its conclusions of law (1) that a property owner has no common law or statutory duty to control non-noxious weeds and (2) a claim only

arises once a farmer attempts to remedy a weed problem and fails to use ordinary care. The trial court had not considered Barker's duty under a statutory or common law nuisance theory which contains a duty to prevent the invasion of another's private interest in the use and enjoyment of land. Normally, the ultimate facts found by the trial court are the ultimate facts which correspond to the issues raised by the pleadings. The pleadings set forth the cause of action and the elements making up that cause of action. *Bothell v. Hoellwarth*, 10 S.D. 491, 74 N.W. 231, 232 (S.D.1898).

It requires a statement of the ultimate facts responsive to the issues arising upon the pleadings,—a finding upon each material issue of fact involved in the action. Simple as the rule seems to be, its application to particular cases frequently causes great perplexity. In many instances it is extremely difficult to determine what are "ultimate facts," as distinguished from evidence, on the one hand, and conclusions of law, on the other. Usually, the court's findings should substantially conform to the allegations of the pleadings, but they are not always stated with accuracy and precision. The court should determine what material ultimate facts are at issue, and make its findings thereon, guided by the same considerations which would control it in framing special interrogatories for a jury. Statements which would be sufficient in a special verdict are sufficient when made by the court.

*McKenna v. Whittaker*, 9 S.D. 442, 69 N.W. 587, 588 (1896) (internal citations omitted).

[¶ 19.] Had the trial court applied the correct law to plaintiffs' nuisance claim, the court would have considered the evidence as it supported the elements of proof of a claim for nuisance. The trial

court, however, rejected the nuisance claim finding that no duty existed. The trial court in its conclusions of law only recognized a legal claim based on the following theory as stated in the trial court's conclusion of law number 6:

> There is no authority imposing a general duty on farmers to control weeds. (citation omitted). However, once a farmer attempts to remedy a weed problem, he must use ordinary care and can be liable for an independent act of negligence if his methods are unreasonable.

The trial court's ultimate facts would necessarily be in reference to the court's theory of liability and would only have incorporated Barker's conduct in attempting to remedy the weeds once they became a problem.[2] Since the trial court did not consider the nuisance claim, it necessarily follows that the ultimate facts did not correspond to the elements of a nuisance claim.

 [¶ 20.] We have stated the findings of fact must support conclusions of law. *Jasper v. Jasper*, 351 N.W.2d 114, 117 (S.D.1984) (*citing Knodel v. Bd. of County Comrs., Etc.*, 269 N.W.2d 386, 390 (S.D.1978)) (citations omitted). We have also said that "failure to make certain findings requires reversal." *Jasper*, 351 N.W.2d at 117.[3] The findings of fact are probably not clearly erroneous as they relate to Barker's 1998 efforts to control the weeds once they became a problem.

[¶ 21.] A claim of nuisance, as this Court has now defined, was not addressed by the trial court. Therefore, on remand the circuit court must determine whether the *initial* 1998 infestation of Collins' land—as opposed to the duty to control the infestation once it developed—resulted from Barker's farming, cultivation, or other activities under the foregoing rules. It should, however, be reiterated that this "decision does not create a new duty for farmers to control the spread of weeds. It [simply] recognizes farmers must exercise ordinary care when actively working the land." *Kukowski*, 507 N.W.2d at 70.

[¶ 22.] We reverse and remand to allow Collins to proceed with their claim for nuisance as set forth in this opinion.

[¶ 23.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

---

2. The trial court made the following findings of fact:

> 1. Barker made reasonable efforts and exercised ordinary care when he actively worked his land in an effort to control the non-noxious weeds on his lands.
>
> 2. There is no "standard" method of controlling weeds and almost every weed management situation is different.
>
> 3. Barker, in controlling his non-noxious weeds, relied upon and substantially complied with the directions of government officials. Although a significant amount of weeds traveled to Collins' property it was not due to any deviation by Barker from such direction.

> 4. Barker's weed control and land management practices were reasonable under the circumstances.

3. Where the ultimate conclusion can be arrived at only by applying a rule of law, the result is a "conclusion of law" and not a "finding of fact." *Weltz v. Bd. of Educ. of Scotland Sch. Dist.*, 329 N.W.2d 131, 134 n. 2 (S.D.1983); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 296 (S.D.1982). Whether the ultimate fact can be arrived at only by application of a rule of law depends upon whether it is reached by natural reasoning or by the application of fixed rules of law....*Jasper*, 351 N.W.2d at 117.