**F I L E D**

UNITED STATES COURT OF APPEALS

**October 7, 2005**

FOR THE TENTH CIRCUIT

DOYLE E. BILLER, as Trustee of the
Doyle E. Biller Family Trust,

Plaintiff-Appellant,

v.

ANN M. VENEMAN, Secretary of the
United States Department of
Agriculture,

Defendant-Appellee.

No. 04-3193
(D.C. No. 03-CV-1128-WEB)
(D. Kan.)

ORDER AND JUDGMENT *

Before **HENRY** , **ANDERSON** , and **TYMKOVICH** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-Appellant Doyle E. Biller, Trustee of the Doyle E. Biller Family Trust (Trust), appeals from the district court's order upholding a decision of the Department of Agriculture (Agency) to terminate the Trust from the Conservation Reserve Program (CRP). The Trust contends that the Agency's finding that it violated its CRP contract by having uncontrolled noxious weeds on the subject property was arbitrary and capricious and not supported by the evidence. The Trust further argues that the district court erred in declining to review the Agency's decision to terminate the contract. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

*Background*

The CRP authorizes the Agency to enter into contracts with eligible land owners whereby the land owner agrees to remove agricultural land from farm production in exchange for government payments. The contracts require the participants to implement an approved conservation plan and adhere to certain other criteria set forth in various federal statutes and regulations. *See generally* 16 U.S.C. §§ 3831-3836; 7 C.F.R. Pt. 1410. At issue in this case is the requirement that all participants subject to a CRP contract "[c]omply with noxious weed laws of the applicable State or local jurisdiction." 7 C.F.R. § 1410.20(a)(7). If a participant violates the terms of a CRP contract, the Agency is authorized to terminate the contract and assess penalties. 7 C.F.R. § 1410.52.

In 1997, the Trust enrolled 122.6 acres of land located in Kansas in the CRP. Pursuant to the CRP contract, the Trust agreed to comply with the noxious weed laws of the State of Kansas. Under Kansas law, a land owner has a duty to control the spread of and eradicate all weeds on its property declared by legislative action to be noxious. K.S.A. § 2-1314; *Krug v. Koriel*, 935 P.2d 1063, 1066 (Kan. Ct. App. 1997). Johnson grass is such a legislatively declared noxious weed. K.S.A. § 2-1314.

In 1998, a routine status review conducted by the Natural Resources Conservation Service (NCRS) revealed a serious Johnson grass problem on the Trust's property. [1] The problem was again noted in July 1999 in a report prepared by the County Noxious Weed Department. In that report, the County Noxious Weed Supervisor stated that a severe infestation of Johnson grass had partially gone to seed and that in his opinion, "prior control measures had not been taken

---

[1] The Trust argues that the Agency nonetheless marked "yes" on the 1998 Status Review to indicate that it was in compliance with its CRP contract despite the existence of Johnson grass. Attachment D to the Trust's brief is a copy of what the Trust claims to be the 1998 Status Review. The word "yes" is circled to indicate that the Trust was in compliance. Oddly, on what appears to be another copy of the same document in the Trust's appendix, the word "yes" is not circled. Aplt. App. Vol. III at 372. Since neither the Trust nor the Agency addressed this discrepancy, this court has no way of knowing whether in 1998, the Trust was deemed to be in compliance with its CRP contract or not. It is clear from both documents, however, that there was a problem with Johnson grass on the property. Aplt. Br., Attach. D and Aplt. App. Vol. III at 372 ("There is a serious johnsongrass problem.").

[that] calendar year." Aplt. App. Vol. III at 263. The report concluded that the Trust's land was not in compliance with Kansas's noxious weed laws.

When the Agency received the report, it sent a letter to the Trust, dated July 28, 1999, stating that based on the severe Johnson grass infestation, the Agency had determined that the Trust was not in compliance with its CRP contract. The letter apprised the Trust that unless it appealed this finding, the decision would be final and the CRP contract would be subject to termination.[2] The Trust responded by letter dated August 19, 1999, in which it outlined the steps it had recently taken to eradicate the Johnson grass problem including firing the property manager and hiring someone else to mow the Johnson grass. Nonetheless, the problem persisted. A CRP Farm Spot Check report dated August 26, 1999, indicated that although most patches of the Johnson grass had been clipped, the property still had a moderate to severe noxious weed problem. The Trust points out, however, that an October 1, 1999, Status Review report stated that the Johnson grass had been treated and that "[m]aintenance [was] adequate." Aplt. App. Vol. III at 373.

Ultimately, the Agency concluded that 36.6 acres of the property were infested with Johnson grass in violation of CRP regulations and the contract's

---

[2]     The Trust claims not to have timely received this letter because it was sent to the wrong address. Nevertheless, in a visit to the county office on August 10, 1999, Mr. Biller was advised in person of the noxious weed violation.

noxious weed provision. Based on this finding, the Agency terminated those 36.6 acres from the program and issued a new contract to the Trust for the remaining 86 acres. The Trust objected to the partial termination and refused to sign the new contract within the time period prescribed by the Agency. Consequently, the Agency terminated all of the Trust property from the CRP. In two separate appeals, the Trust challenged first the Agency's finding that the Johnson grass infestation constituted a violation of the CRP contract, and second the Agency's decision to terminate the remaining 86 acres because of the Trust's refusal to sign a new contract. Although both hearing officers who heard the appeals sided with the Trust, the National Appeals Division (NAD), the body of last resort in the administrative appeal process, reversed. In the first appeal, the NAD concluded that the Agency's finding of a violation was not erroneous:

> The record shows that the Johnson grass infestation continued to go unchecked from 1997 through 1999. The Appellant did not prove that the CRP acreage was not infested with Johnson grass or provide any evidence to show that recommended measures were taken to maintain the coverage and control Johnson grass before notice of the violation. The Appellant failed to carry out the CRP contract requirement to control weeds.

Aplt. App. Vol. III at 446. In the second appeal, the NAD concluded that pursuant to federal regulations and its internal rules, the Agency had the right to terminate the remaining 86 acres from the CRP based on the Trust's refusal to sign a new contract.

In a single complaint, the Trust appealed both decisions to the U.S. district court pursuant to 7 U.S.C. § 6999, which provides for judicial review of final decisions of the NAD. The district court upheld the NAD's finding that the Trust property was out of compliance with the CRP, finding that the decision was supported by substantial evidence and was not arbitrary or capricious. The district court held, however, that it lacked jurisdiction to review the Agency's decision to terminate the CRP contract because there was no meaningful standard against which to judge the Agency's exercise of discretion.

*Discussion*

We review the district court's decision upholding agency action and its determination on jurisdiction de novo. *Payton v. U.S.D.A.*, 337 F.3d 1163, 1167, 1168-69 (10th Cir. 2003). In *Payton*, we were charged with deciding whether an Agency decision to terminate a CRP contract was subject to judicial review and if so, whether the decision was arbitrary or capricious. 337 F.3d at 1165-66. The Agency had determined that the plaintiff failed to make a good faith effort to comply with his CRP contract and therefore terminated 35 acres of the plaintiff's land from the program. *Id.* at 1166. The district court concluded that it lacked jurisdiction to review the decision, finding that the prerogative to terminate CRP contracts was committed to agency discretion by law. *See id.* at 1167, 1168.

We reversed. Citing 7 C.F.R. § 1410.52(a)(1), we noted that "the discretion of the agency to terminate a CRP contract is predicated on a finding that the participant has failed to carry out the terms and conditions of a CRP contract." *Id.* at 1168 (quotation marks and alteration omitted). We emphasized that whether a participant in the CRP is in compliance with the contract is a matter that "must be decided on the basis of the facts and the law, and is not left to the unfettered discretion of the agency." *Id.* Thus, we concluded that judicial review of the agency's finding of a violation was appropriate because the finding was necessarily governed by straightforward legal standards. *Id.* Importantly, however, for purposes of the instant case, we did not decide in *Payton* "whether the agency's exercise of discretion with respect to whether to terminate a CRP contract, once it has been found that the participant is in violation, is reviewable." *Id.* n.3.

Here, the Trust asks us to decide both questions: (1) whether the Agency's finding that the Trust violated its CRP contract was arbitrary or capricious, and (2) whether, after finding a violation, the Agency properly terminated the entire contract. As we held in *Payton*, the Agency's determination that a plan participant is in violation of the terms of its CRP contract must be decided based on the facts and the law and is not left to the Agency's unfettered discretion. *Id.* at 1168. Accordingly, we have jurisdiction to review the Agency's decision

that the Trust violated its CRP contract by allowing Johnson grass to grow on the property.

"The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to determine whether the agency examined the relevant evidence and articulated a rational connection between the facts found and the decision made." *Id.* at 1168. Under this standard, we conclude that the Agency's finding was supported by the evidence and was not arbitrary or capricious.

Although it is questionable whether, notwithstanding the Johnson grass problem, some Agency personnel deemed the Trust to be in compliance with the CRP, it is clear that Johnson grass was growing on the property during the relevant time period and that Johnson grass is a noxious weed in the State of Kansas. It is also clear that the Trust took no steps to treat the Johnson grass until after it was notified of the violation in August 1999, even though the weed was found on the property well before then. Although the Trust complains that it should not be punished for failing to act before it was notified of the violation, it has not pointed to a single statute, regulation, or contractual provision affording it the luxury to not act absent formal notification that a violation has occurred. To the contrary, 7 C.F.R. § 1410.20(a)(7) required the Trust to comply with state and local noxious weed laws, which in turn placed the burden on the Trust to affirmatively control and eradicate noxious weeds. *See Krug*, 935 P.2d at 756;

K.S.A. § 2-1314.  Based on this record, we conclude that the Agency examined the relevant evidence and articulated a rational basis between the facts found and its decision that the Trust violated the CRP contract.

We now turn to the question left open in *Payton* —whether, having legitimately found a violation of the CRP contract, the Agency's decision to terminate the contract is reviewable.  We agree with the district court that it is not.  Generally, all agency action is presumed to be reviewable under the Administrative Procedure Act (APA).  *Sierra Club v. Yeutter*, 911 F.2d 1405, 1410 (10th Cir. 1990).  The APA, however, contains two exceptions to the presumption of reviewability:  where a statute expressly precludes judicial review, 5 U.S.C. § 701(a)(1); and where agency action is committed to agency discretion by law, 5 U.S.C. § 701(a)(2).  Here, none of the parties contend, and the district court did not find, that review is precluded by statute.  Thus, we focus on subsection (a)(2), which precludes judicial review of actions committed to agency discretion.

As we have previously held, this narrow exception applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply."  *Sierra Club*, 911 F.2d at 1411 (quotation marks omitted).  "[U]nder § 701(a)(2), even when Congress has not affirmatively precluded judicial oversight, review is not to be had if the statute is drawn so that

a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 599-600 (1988) (quotation marks omitted). This standard requires careful examination of the statute pursuant to which the agency acted. *See id.* at 600.

The Trust challenges the Agency's decision first to terminate the 36.6 acres with the Johnson grass infestation and then the remaining 86 acres when the Trust refused to sign a new contract. The statutory and regulatory scheme at issue, however, gives the Agency broad discretion to terminate a CRP contract or institute some other remedy once a violation is found. The applicable statute, 16 U.S.C. § 3832(a)(5), provides that a CRP participant forfeits all rights under the contract "if the Secretary, after considering the recommendations of the soil conservation district and the Natural Resources Conservation Service, determines that the violation is of such nature as to warrant termination of the contract." The regulations in turn provide that the Agency may terminate a CRP contract if "[t]he participant is not in compliance with the terms and conditions of the contract." 7 C.F.R. § 1410.32(f)(3); *see also* 7 C.F.R. § 1410.52(a)(1). If the Agency decides that termination is not warranted, it can implement other relief as it deems appropriate, *see id.* at § 1410.52(b), including demanding a refund or adjusting payments under the contract. *See* 16 U.S.C. § 3832(a)(5)(B). Finally, in order for

land to be enrolled in the CRP, the regulations require that a contract be signed within the time period prescribed by the Agency. 7 C.F.R. § 1410.32(d).

In *Webster*, the Supreme Court held that a provision of the National Security Act allowing the termination of an employee whenever the Director "deem[ed] such termination necessary or advisable in the interests of the United States," 486 U.S. at 600 (quotation marks and alteration omitted), exuded deference to the Director and foreclosed the courts' ability to apply any meaningful standard of review. *Id.* The Court concluded that the language of the provision "strongly suggest[ed] that its implementation was committed to agency discretion by law." *Id.* (quotation marks omitted).

Following the above standards and guided by the Court's decision in *Webster*, we conclude that the statute and regulations at issue in this case foreclose our ability to apply any meaningful standard of review to the Agency's decision to fully or partially terminate a CRP contract once a violation has been found. Like the statute in *Webster*, we believe that the statutory and regulatory scheme at issue exudes full deference to the Agency once a legitimate violation has been found. *See North Dakota v. Yeutter*, 914 F.2d 1031, 1035 (8th Cir. 1990) (noting that the statutory scheme "governing the CRP accord[s] the Secretary broad discretion in his administration of various aspects of the program."). We therefore hold that the decision of the Agency to first partially

-11-

and then fully terminate the Trust's CRP contract was a decision committed to agency discretion by law and is not judicially reviewable.

Accordingly, the judgment of the district court is **AFFIRMED**.

Entered for the Court

Stephen H. Anderson
Circuit Judge