838 F.Supp. 427 (1993)
JIMMIE E. SMALL, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. N91-0087-C (CDP).
United States District Court, E.D. Missouri, N.D.
September 27, 1993.
*428 Jimmie E. Small, pro se.
Joseph B. Moore, Asst. U.S. Atty., St. Louis, MO, for defendant.

MEMORANDUM OPINION
PERRY, United States Magistrate Judge.
This matter is before the Court following a bench trial on plaintiff's pro se complaint. From the evidence and arguments presented by the parties, the Court makes the following findings and conclusions.

Findings of Fact:
Plaintiff Jimmie Small owns and farms property in Knox County, Missouri. In 1987 and 1988, plaintiff began participating in the Conservation Reserve Program (CRP), which was authorized as part of the Food Security Act of 1985. See 16 U.S.C. § 3801, et seq. and regulations at 7 C.F.R. Part 704. That legislation provided that the Secretary of Agriculture could contract with eligible landowners to assist them in conserving and improving the soil and water resources of their agricultural property by removing land from production and establishing cover crops pursuant to an approved conservation plan. In order to participate in the program the landowner must agree not to grow crops on the property for ten years, and in exchange, the government pays "rent" on the land. See 7 C.F.R. 704.12(a)(5). The program is administered by the Agriculture Stabilization and Conservation Service (ASCS), an agency established to administer programs of the Commodity Credit Corporation (CCC). See 7 C.F.R. 704.3(a).
The land plaintiff committed to this venture was designated under four CRP contracts:
(1) CRP Contract # 45-B, effective on October 16, 1987, covering 65.6 acres.
(2) CRP Contract # 162-B, effective on October 16, 1987, and covering 58.3 acres.
(3) CRP contract # 295, effective May 9, 1988 and covering 19.5 acres.
(4) CRP contract # 308, effective on August 31, 1988, and covering 12.2 acres.
Mr. Small operated under these contracts for a short time without incident, and in early 1989 the ASCS approved his request to cost-share the overseeding/interseeding of the croplands under CRP contracts # 45B and # 162B. Before any payments were made as part of the cost-sharing agreement, however, the ASCS received an offset request from the Small Business Administration (SBA), because plaintiff had an outstanding debt to the SBA. Sometime in early 1989, plaintiff went to the Knox County ASCS office and presented his seeding ticket invoices, for the purpose of receiving reimbursement pursuant *429 to the cost-sharing contract. The ASCS then notified plaintiff of the SBA offset request and told him that any monies owed him on the cost-sharing agreement would be paid to the SBA. Mr. Small left the office, taking his tickets with him, and never signed the verification forms required for payment under that program. Because plaintiff had not provided verification, no payments were made by the ASCS and no set-off payment was made to the SBA.
Mr. Small then challenged the offset administratively. He ultimately filed suit against certain government officials relating to the offset, and that suit was settled by stipulation of the parties in May of 1990. (Cause No. N89-0128-C, E.D.Mo.). Although plaintiff still contends that the offset was not valid, that issue is not before the Court in this proceeding. The SBA offset is relevant here only because it was this SBA offset which apparently set Mr. Small on the course of action which led to the cancellation of his CRP contracts and, ultimately, this lawsuit.
On August 9, 1989, Hillis G. Rice of the ASCS inspected plaintiff's property and discovered 3.4 acres of soybeans planted on land covered by CRP contract # 162-B (on land referred to in the proceedings as field 2A), 19.5 acres of soybeans planted on land covered by CRP contract # 295 (field 2B), and 6.54 acres planted on land covered by CRP contract # 308 (fields 14A, 14B, 5A, and 6B). This spot check of plaintiff's property came about because other farmers in the area had complained that soybeans were being grown on CRP reserve land. The Knox County ASCS office then notified plaintiff that he was in violation of his contracts by planting on reserved land, and informed him that the County ASCS Committee would hold a hearing on the matter. Plaintiff appeared before the county committee in August of 1989, and, according to the testimony of Hillis Rice (which was not contested by plaintiff), plaintiff told the committee that if the SBA set-off was not resolved, there would be more beans planted on his reserve land in 1990.[1] Based on this comment, and others, the committee determined that plaintiff's actions had not been inadvertent, and the committee determined that plaintiff had not acted in good faith. The committee therefore decided to terminate plaintiff's CRP contracts.
On August 30, 1989, the Knox County ASCS Committee notified Mr. Small of its determination under 7 C.F.R. Part 704 that he had not complied in good faith with the terms and conditions of his contracts and that CRP Contracts # 162B, # 295 and # 308 were thereby terminated. The letter from the County Committee requested that Mr. Small refund all CRP payments received, plus interest, and pay liquidated damages. The letter also notified Mr. Small that he had 15 days from the date of the letter to certify his 1989 acreage under CRP Contract # 45B. Subsequently, the County Committee terminated CRP Contract # 45B because Mr. Small failed to certify the 1989 CRP acreage within the required time.
Mr. Small appealed the County Committee decision to terminate his CRP contracts to the Missouri State ASCS Committee. The State Committee concurred in the County Committee decision and denied the appeal. Mr. Small then appealed the State Committee's decision to the ASCS Deputy Administrator for State and County Operations (DASCO) in Washington, D.C., pursuant to 7 C.F.R. Part 780. An appeal hearing was held by DASCO on June 11, 1990.
On July 20, 1990, DASCO issued its decision upholding the determination of the County Committee. In the July 20, 1990, decision letter, DASCO noted that "[t]he record ... shows that you agreed soybeans were planted on the CRP acreage and stated that if [the] set-off by the Small Business Administration (SBA) was not straightened out there would be more soybeans planted on the CRP acreage in 1990." On August 6, *430 1990, Mr. Small submitted a request for reconsideration to DASCO. On October 9, 1990, DASCO issued its final decision on Mr. Small's request for reconsideration, denying his appeal.
Plaintiff argues that he was not given the opportunity to present his case in the administrative process, and argues that DASCO considered evidence not presented to the county and state commissioner. He also asserts that the government altered documents and contracts, and destroyed evidence. Understanding the origin of these arguments somewhat clarifies plaintiff's contentions in this case.
Field 2A, which is one part of CRP contract # 162B, was supposed to contain 10 acres of reserve land. The County ASCS office utilizes a large composite photograph-map of the County, on which it marks the various fields covered by CRP contracts. This large composite chart had shown, prior to plaintiff's violation, that field 2A contained 10 acres of reserve land. After the plaintiff planted 3.4 acres of soybeans on this area, the ASCS office re-marked the map to show only 6.6 acres of CRP land in field 2A. The exact time of this change was not known, but it occurred well after the soybeans were found in the field, and probably after this suit was filed. Thus, the official map was remarked to show where land in field 2A was actually being held in reserve, that is, where no soybeans had been planted. Plaintiff has argued that this remarking proves that no soybeans were planted on field 2A. He also has argued that this remarking was an alteration to his contract, changing the amount of land in field 2A which he agreed to hold in reserve from 10 acres to 6.6 acres, that he was not given notice of this change, and that the ASCS did not comply with its own regulations when it "changed" his contract. He has also argued that this alteration voided the contract, rendering his alleged planting of soybeans on field 2A a non-violation of the contract. Plaintiff has also, at various times, contended that this constituted destruction of evidence. The court disagrees with all of these contentions; none of them makes any sense. It is very clear from the evidence that the change on the map was done after the fact of plaintiff's violation, and was done for the purpose of showing what land was actually being held in reserve. It had absolutely no effect on the legal rights or obligations of the parties.
Plaintiff also argues that many of the documents in the government file are not signed, and the contracts are therefore invalid. He has argued repeatedly that he was not given a copy of the appendix to some of the contracts. This argument is based on his discovery that the county ASCS does not have a signed document from him acknowledging receipt of the appendix for some of the contracts.[2] Plaintiff claims that this shows that the government has treated him inconsistently and unfairly. He argued in closing argument that because the Secretary of Agriculture failed to perform his obligations under the contract by providing an appendix for each CRP contract, plaintiff was excused from performing his obligations. This argument regarding the appendix, even if correct, would not help plaintiff, because if the contracts are invalid for lack of a signed appendix, then plaintiff certainly cannot recover on those contracts.

Conclusions of Law
This case was referred to the undersigned for trial and all other purposes with consent of the parties pursuant to 28 U.S.C. § 636(c). Because plaintiff was proceeding pro se, and in part because of the zeal with which plaintiff has pursued his claim, the Court has *431 made every effort to construe plaintiff's pleadings liberally, and to exercise her discretion in his favor on many procedural and evidentiary matters. In retrospect, this liberal construction and deference to plaintiff's pro se status may have over complicated this case. The procedural history of the case is quite convoluted, and is set forth in some detail in the Memorandum and Order dated September 25, 1992. As set forth in more detail in that Memorandum, the Court agreed with plaintiff that it had jurisdiction over plaintiff's contract claim for no more than $10,000 under 28 U.S.C. § 1346(a)(2), and plaintiff explicitly waived any claim for damages in excess of $10,000. The undersigned, accordingly, will address plaintiff's suit as a contract cause of action.
The government defended the case as a claim for review of agency action under the Administrative Procedures Act, 5 U.S.C. § 551 et seq., and plaintiff, in his various post-trial filings (most of which were filed without leave of court, and which do not comply with any provision of the Federal Rules of Civil Procedure), appears also to now believe that his claim was brought pursuant to the APA. The undersigned, accordingly, will also address this case as an APA cause of action. Whether this court might have jurisdiction under the Administrative Procedures Act to enter a declaratory judgment in a case such as this has been characterized by the Eighth Circuit as a "difficult issue." See Penner v. Madigan, 974 F.2d 993, 996 (8th Cir.1992) (citing Hall v. Lyng, 828 F.2d 428 (8th Cir.1987) and Expedient Serv., Inc. v. Weaver, 614 F.2d 56 (5th Cir. 1980)).
The Court has serious reservations whether the final ASCS decision is reviewable by this Court pursuant to the APA. Although 28 U.S.C. § 1346(a)(2) serves as the waiver of sovereign immunity, the Administrative Procedures Act, 5 U.S.C. § 701 et seq., provides the framework for determining when a court may review an agency's determination. The Eighth Circuit Court of Appeals has held that all ASCS determinations "committed to agency discretion" are not reviewable. North Dakota ex rel. Bd. of Univ. & School Lands v. Yeutter, 914 F.2d 1031, 1033-35 (8th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2258, 114 L.Ed.2d 710 (1991). The Yeutter court noted that the ASCS rejected a CRP application because it applied an agency presumption that the land in question had been acquired for the purpose of placing it in the CRP. Under 16 U.S.C. § 3835(a)(1)(C) land acquired specifically for CRP placement may not be permitted to participate in the CRP. The Yeutter court held that the ASCS determination that certain land violated § 3835(a)(1)(C) was "agency action * * * committed to agency discretion by law" and thus, not judicially reviewable under 5 U.S.C. § 701(a)(2). The Yeutter court applied the test for determining agency discretion announced by the Supreme Court in Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) in making this determination. While the pending case does not involve 16 U.S.C. § 3835(a)(1)(C), the analysis of the Yeutter court is relevant to the instant inquiry. Title 7 C.F.R. § 704.22 provides in pertinent part:
(a) Termination of CRP Contract.
(1) If the participant fails to carry out the terms and conditions of the CRP Contract, CCC may, after considering the recommendations of the CD and ASCS, terminate the CRP Contract.
The termination of a CRP contract is thus a discretionary function grounded in policy considerations. The decision to actually terminate the contracts once the determination was made that plaintiff had failed to carry out the terms of the contract was a decision committed to the discretion of the agency. Because the decision to terminate plaintiff's contracts was a decision committed to the discretion of the agency, it was, and is, unreviewable by this Court. Plaintiff is therefore not entitled to judgment on his APA theory.
Even if plaintiff's APA theory is reviewable, defendant would nevertheless prevail on this theory because plaintiff has not shown that ASCS' decisions violated the standards of review under the Administrative Procedures Act. 5 U.S.C. § 706(2). The agency decision must be upheld unless the Court finds it to be, inter alia, arbitrary, capricious, an abuse of discretion or not in accordance with law. Madsen v. Dept. of *432 Agriculture, et al., 866 F.2d 1035, 1036-37 (8th Cir.1989) (interpreting 7 U.S.C. § 1385).
As discussed, supra, Hillis G. Rice inspected plaintiff's property on August 9, 1989, and discovered soybeans planted on land covered by three CRP contracts. The Knox County ASCS office informed plaintiff that he was in violation of three of his contracts and scheduled a hearing on the matter. Plaintiff attended this hearing and informed the committee that if the SBA set-off was not resolved there would be more beans planted on reserve land in 1990. Based on the fact that plaintiff had violated the terms of three of his CRP contracts, and based on the fact that he told the ASCS committee that he planned to continue to do so, plaintiff's CRP contracts designated # 162B, # 295, and # 308 were terminated. Following plaintiff's failure to certify that he was in full compliance with respect to CRP contract # 45B, this contract was terminated as well. Plaintiff then exercised his various regulatory rights to appeal, all to no avail. Plaintiff has provided no evidence that the actions of the ASCS, from Hillis G. Rice all the way through the appeal process, were arbitrary, capricious, an abuse of discretion, or not in accordance with law. Plaintiff's APA cause of action must therefore fail.
The undersigned now returns to plaintiff's contract cause of action (assuming that this case is not exclusively governed by the APA). This cause of action is limited to plaintiff's claim that defendant breached its contracts with plaintiff by terminating the four CRP contracts, because, plaintiff alleges, there were no soybeans planted in field 2A (which was governed by CRP contract # 162-B). (See September 24, 1992 Memorandum and Order at pp. 6-12.) The undersigned finds, having listened intently to the evidence at trial, that soybeans were planted in field 2A in 1989. Defendant is therefore entitled to judgment on plaintiff's contract cause of action as well.
Plaintiff has filed various motions since the trial of this matter, none of which have any merit. All will be denied.
A separate judgment in accordance with this opinion is entered this same date.

JUDGMENT
This action came on for trial before the Court, the undersigned United States Magistrate Judge presiding, and the issues having been duly tried and a decision having been duly rendered, as set forth in more detail in the Memorandum Opinion entered this date,
It is Ordered and Adjudged
that the plaintiff take nothing on his complaint, and that the action be dismissed on the merits, and that defendant shall recover of plaintiff its costs of this action.
NOTES
[1] As part of his challenge to the determination that he had violated his contracts, plaintiff later requested the county committee to go back out to his property in August of 1990 to spot check for evidence of planting. When they did so, on August 8, 1990, they found no evidence of soybeans in field 2A. This was, of course, a full year after the beans had been found in the field, and there is no reason to believe that there should have been evidence of such planting a full year later. The absence of beans in 1990 has no relevance to the well-documented 1989 violation.
[2] In his administrative appeal, Mr. Small argued that his CRP Contracts # 45B, # 162B and # 295 had been terminated wrongfully because he did not sign or receive the Appendices to Form CRP-1, which the participant is supposed to sign, and which spell out the terms and conditions of the CRP contracts. However, on January 20, 1988, Mr. Small had appealed a County Committee determination that certain land was ineligible to be placed in the CRP program. In support of that prior appeal Mr. Small argued that ¶ 2C of the Appendix to Form CRP-1 supported his position, and had attached a copy of the Appendix to his appeal letter. In addition, DASCO also noted that the record showed that Mr. Small had signed the Appendix to CRP Contract # 308 on August 31, 1988, and that the spot check performed on August 8, 1990, at Mr. Small's request, demonstrated that he was fully aware of the terms and conditions of his CRP contracts.