F I L E D
United States Court of Appeals
Tenth Circuit

JUL 29 2003

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLIE A. PAYTON,

        Plaintiff - Appellant,

v.

UNITED STATES DEPARTMENT
OF AGRICULTURE,

        Defendant - Appellee.

No. 02-2163

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-01-1043-LCS/KBM)**

---

Submitted on the briefs:

Eric D. Dixon, Portales, New Mexico, for Plaintiff-Appellant.

David C. Iglesias, United States Attorney, and Raymond Hamilton, Assistant
United States Attorney, Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **TACHA**, Chief Judge, **O'BRIEN** and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Plaintiff Charles A. Payton, a Roosevelt County, New Mexico farmer, was terminated from the Department of Agriculture's Conservation Reserve Program (CRP) for planting and harvesting wheat on a thirty-five-acre parcel that had been dedicated as a conservation reserve. Mr. Payton contends that the Department was mistaken about the location of the conservation reserve. The Hearing Officer, after hearing testimony from various officials involved in administering the program, concluded that Mr. Payton is correct. The Hearing Officer was overruled by the Acting Director of the National Appeals Division (NAD). The questions before us are whether the decision of the Acting Director is subject to judicial review and, if so, whether it was arbitrary and capricious. [1]

## I. Background

The CRP authorizes the Secretary of Agriculture to contract with eligible farm owners and operators to remove agricultural land from farm production under an approved conservation plan, in exchange for government payments. Participants must implement a conservation plan, establish vegetative cover, and not allow grazing, harvesting, or other commercial use of the crop from the designated land. Various statutes and federal regulations define and govern these

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

obligations. *See generally* 16 U.S.C. §§ 3801-3836; 7 C.F.R. Pt. 1410.

Violations of the CRP contract may result in termination of the contract, with attendant monetary penalties. 7 C.F.R. § 1410.52.

In 1997 and 1998, Mr. Payton (as operator) and Kenneth Hasken (as owner) enrolled two parcels (one twenty acres, one thirty-five acres) of land in the CRP. Only the thirty-five-acre parcel is in dispute. In May, 2000, Mr. and Mrs. Shannon Lee purchased the property. Shortly thereafter, the county Executive Director visited the farm and concluded that the thirty-five-acre CRP plot was planted with a wheat crop. He advised Mr. Payton and Mr. Lee that the wheat could not be harvested. A farm visit a month later revealed that the wheat had been harvested. In November of 2000, the County Committee for the Farm Services Agency (FSA), which administers the Program, notified Mr. Payton that a violation of the CRP contract had occurred. Upon further review, the committee concluded that the thirty-five-acre parcel maintained by Mr. Payton as a conservation reserve had been moved from its original location–in effect, that the CRP reserve was on the wrong land. The committee ultimately determined that Mr. Payton had not made a good faith effort to comply with the contract and terminated the thirty-five-acre field from the program. The state FSA Committee upheld this decision.

Following the administrative procedure for seeking review of such decisions, Mr. Payton received an evidentiary hearing. The Hearing Officer noted that "[t]his case quickly and completely turns on the answer to the core question, what is the correct location of the 35 CRP acres." Based on the testimony of several witnesses, the Hearing Officer found that the CRP acreage had not been delineated on a map, nor described by metes and bounds, at the time the acreage had been designated, and that "[i]t appears that the map and controversy arose upon or near the sale of the acreage to Mr. Shannon Lee." In the absence of a contemporaneous map, the Hearing Officer relied on the testimony of an agency Soil Conservation Technician, who stated that in 1998 he had staked out and measured the same thirty-five-acre field now maintained by Mr. Payton as a CRP reserve. The Hearing Officer concluded:

> The 35 acres that are under the CRP Contract #924 are located along the left (West) of the center line of the North ½ of Section 31 as shown in Appellant's Exhibit F. The Appellant is not in violation of his Conservation Plan or CRP contract and has not relocated the 35 acres from its original location.

Aplt. App. at 18.

The agency appealed to the NAD, and the Acting Director reversed the Hearing Officer's decision. Unlike the Hearing Officer, the Acting Director gave credence to the aerial map on which the FSA committee had based its decision, an "aerial map (soil map of CRP contract 924) [which] showed 'CRP' listed in field

-4-

2A," and found that the map clearly showed that the CRP reserve had been moved from its original location. She concluded that when Mr. Payton "certified the acreage in 1998 and 1999, he reported that the 35 acres of CRP were located in field 2A." She further noted that a form completed by the agency in 1997 used the field delineations found on the map and that the soil types and designated coverage reported by the farmer in 1998 and 1999 corresponded to the map. She rejected the testimony of the Soil Conservation Technician on the ground that he had based his measurements on a starting point provided by Mr. Payton rather than on the map. The Acting Director thus concluded that substantial evidence did not support the Hearing Officer's determination that the agency erred regarding the location of the CRP parcel. Accordingly, she determined that Mr. Payton's CRP contract was properly terminated for failure to comply with its terms and conditions. This decision     constituted the agency's final decision under 7 U.S.C. § 6999.

## II. Jurisdiction

Mr. Payton filed suit in district court to review the agency action, pursuant to 7 U.S.C. § 6999, and the parties consented to proceed before a magistrate judge. [2] The district court determined that it lacked jurisdiction to review

---

[2]     We apply the same standards of review to the magistrate judge's decision as we would to that of the district court. *Grimsley v. MacKay*, 93 F.3d 676, 679
(continued...)

Mr. Payton's claim, but, alternatively, if it did have jurisdiction, the agency's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

The jurisdictional issue must be resolved first. "Jurisdiction is a threshold question that a federal court must address before reaching the merits [ ], even if the merits question is more easily resolved and the party prevailing on the merits would be the same as the party that would prevail if jurisdiction were denied." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). As the Supreme Court explained in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) (citations and quotations omitted):

> Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it. The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception.

We review *de novo* the district court's determination on jurisdiction. *See Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 641 (10th Cir. 1990).

---

[2](...continued)
(10th Cir. 1996).

As a general proposition all agency actions are presumed reviewable under the Administrative Procedures Act (APA). *Sierra Club v. Yeutter*, 911 F.2d 1405, 1410 (10th Cir. 1990). The notable two exceptions, found in 5 U.S.C. § 702(a)(1) and (2), are for situations in which judicial review is expressly precluded by statute or the agency action is committed to agency discretion by law. *Id.* at 1410-11. Here, review is expressly authorized by statute. 7 U.S.C. § 6999, adopted in 1994, provides that "[a] final determination of the Division shall be reviewable and enforceable by any United States District Court of competent jurisdiction in accordance with Chapter 7 of Title 5." That leaves the exception for actions committed to agency discretion by law. This is a narrow exception to the otherwise strong presumption that agency actions are reviewable and is "applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quotation omitted). The Court has further explained this exception as precluding review "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

We cannot agree with the district court that this case falls within that narrow exception. The district court relied on the language of 7 C.F.R. § 1410.52(a)(1) for its determination that jurisdiction was lacking. That

regulation provides, "[i]f a participant fails to carry out the terms and conditions of a CRP contract, CCC may terminate the CRP contract." As the language indicates, the discretion of the agency to terminate a CRP contract is predicated on a finding that the participant has "fail[ed] to carry out the terms and conditions of a CRP contract." Whether a participant was in compliance with the terms and conditions of his CRP contract must be decided on the basis of the facts and the law, and is not left to the unfettered discretion of the agency.

This is in marked contrast to *Lincoln v. Vigil*, 508 U.S. 182 (1993), on which the defendant agency relies in its brief. There, the plaintiff sought review of the entirely discretionary decision of an agency regarding the allocation of funds from a lump-sum appropriation among various programs. Here, the agency's factual and legal conclusion that Mr. Payton violated the terms of his CRP contract is governed by straightforward legal standards, and is squarely within the jurisdiction of the courts under the APA. [3]

We thus reject the reasoning of *Small v. United States*, 838 F. Supp. 427 (E.D. Mo. 1993), *aff'd*, No. 93-3902, 1995 WL 51105 (8th Cir. Feb. 10, 1995) (unpublished disposition), on which the district court relied. [4]

---

[3]    We have no occasion to consider whether the agency's exercise of discretion with respect to whether to terminate a CRP contract, once it has been found that the participant is in violation, is reviewable.

[4]    We note that the district court rendered its decision in *Small* prior to

(continued...)

### III. Merits

The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to determine whether the agency examined the relevant evidence and articulated a rational connection between the facts found and the decision made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994). We review the district court's decision upholding the agency action de novo. *N. M. Cattle Growers Ass'n v. United States Fish & Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001).

Mr. Payton argues that the magistrate judge erred in upholding the Acting Director's determination because the court "fail[ed] to consider the uncontradicted evidence that there never was a map delineating the acreage in Mr. Payton's file." However, as the magistrate judge recognized, the question before the court was whether the Acting Director's decision was based on substantial evidence, and Mr. Payton bore the burden of proof that it was not. The Acting Director relied on certain aerial maps which show [5] that the CRP

---

[4](...continued)
enactment of 7 U.S.C. § 6999, and that the Eighth Circuit's unpublished decision affirming it did not consider whether that enactment might affect the question.

[5]     It is not possible for this Court to tell, from the bare face of the photocopies of the maps in the record, whether the CRP acreage was relocated or not. But Mr. Payton does not seem to dispute that the maps support the agency's

(continued...)

acreage was relocated, and thus that Mr. Payton is out of compliance with respect to the designated thirty-five-acre field. Mr. Payton contends, and the Hearing Officer held, that no such maps were in his file. But the Acting Director relied on evidence that forms completed by the agency in 1997 used the field delineations found on the map and that the soil types and designated coverage reported by Mr. Payton in 1998 and 1999 corresponded to the map. That constitutes substantial evidence that the maps were in existence prior to May, 2000, and thus that the acreage was relocated.

Mr. Payton has provided no record evidence from which we can conclude that the Acting Director's determination was arbitrary or capricious. For purposes of our review, we have only the opinions of the Hearing Officer and the Acting Director in Mr. Payton's appendix and the decisions of the Roosevelt County and State FSA Committees and photocopies of the aerial maps supplied by the agency as a supplemental appendix. According to the Acting Director's opinion, the record shows that forms filed by the agency in 1997 used the field delineations found on the map and that the soil types and designated coverage reported by the farmer in 1998 and 1999 corresponded to the map. Mr. Payton has supplied no record evidence from which we could conclude that analysis is erroneous. It is

---

[5](...continued)
determination; Mr. Payton claims that no such maps were in his file.

the obligation of the party seeking review to provide a record adequate to inform this Court's review. 10th Cir. R. 10.3; 30.1(A)(1); *Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995).

Mr. Payton argues that the Acting Director's decision overturning the Hearing Officer was arbitrary and capricious because the Hearing Officer heard "live testimony" and the Acting Director did not. He cites no authority for this novel proposition, and we find it unavailing. The statutes governing the NAD, 7 U.S.C. §§ 6991-7002, specifically provide for an in-person evidentiary hearing before a Hearing Officer, *id.* at § 6997(c)(2), followed by a record review by the Director of the Division, if requested, *id.* at § 6998. Upon completion of these administrative proceedings, judicial review is available in accordance with 5 U.S.C. §§ 701-706. *Id.* at § 6999.

The facts in this case, as revealed by the stark differences between the Hearing Officer's determination and the Acting Director's determination, suggest that this dispute may well have been the result of a good faith disagreement over the location of the CRP acreage, in which the absence of maps in the file and the action of an agency official in staking out a field on the basis of other information may have misled the farm owners and operators. But in his briefs in this court, Mr. Payton has not specifically challenged the finding of lack of good faith, nor does it appear from the Hearing Officer's determination or the Acting Director's

-11-

determination that this was an issue in the agency proceeding. We therefore have no basis for questioning the agency action on that ground. *See Perry v. Woodward* , 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) (we will not craft party's argument for him).

Accordingly, we REVERSE the district court's holding that it lacked jurisdiction, and AFFIRM the district court's holding affirming the final agency action.