**Barbara BISHOP, Plaintiff,**

**v.**

**Ann M. VENEMAN, Secretary, United States Department of Agriculture, and Chairman of the Board of Directors of the Commodity Credit Corporation.**

**No. 02–4184–SAC.**

United States District Court, D. Kansas.

Aug. 14, 2003.

Stephen P. Weir, Stephen P. Weir, P.A., Topeka, KS, for Plaintiff.

Tanya S. Wilson, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on plaintiff's appeal from a decision of the Director of the National Appeals Division for the United States Department of Agriculture ("USDA"). Plaintiff contends that the USDA erred in reducing by $14,906.00 its annual payment to her, pursuant to contract, for certain conservation and land-use restrictions on her cropland.

## FACTS

The parties agree upon most of the facts which give rise to this case. Plaintiff is a 75 year-old widow who owns approximately 2/3 of the property which is the subject of this case. Her nephew owns the other 1/3 in a trust. Plaintiff executed a Production Flexibility Contract (PFC) with the USDA, through the

> Logan County Farm Service Office, Commodity Credit Corporation, on May 24, 1996. Under the terms of the PFC, the USDA agreed to make annual payments to the plaintiff, as producer, over the seven year term of the PFC (1996 through 2002), in exchange for plaintiff's agreement to, among other matters, protect the land from weeds and erosion in the event she chose not to plant a crop on the land. (R. at 751). Plaintiff understood that she was expected to control the weeds on PFC land.

The contract includes a proviso in the event a producer fails to control weeds on contract acreage. It states:

> COC shall establish rates for calculating payment reductions if the maintenance requirements are not met. The rate shall represent the normal cost per acre in the county of the necessary action to correct the default ... If a maintenance default is determined according to this paragraph a payment reduction applies equal to the acres in default times COC established rate times 3.

(R. at 564).

Plaintiff received a letter dated June 20, 1997, stating in pertinent part as follows:

> One of the provisions of the [PFC] program is producers must protect idled contract acres from wind and water erosion, and weeds shall be controlled. Weed control generally means preventing weed seed production.

> A maintenance spot check conducted on June 17, 1997 revealed that weeds were not being controlled on 557.4 acres of idle contract acreage.

You have 15 calendar days to control the weeds in a manner that will ensure that the seed will not spread to other acreage. After 15 days, a Logan County Office representative will inspect the acreage in question and, if the necessary action has not been taken, PFC payments on this farm will be reduced.

(R. at 389).

By the time plaintiff received this letter, she had already controlled the weeds on the land at issue. No reduction of plaintiff's payment under the PFC was made, thus plaintiff's payment for 1997 included payment for the 557 acres of land on which the weeds had gone to seed before such land was worked. In fact, the report of the farm service agent who conducted the drive-by inspection concluded in his report dated July 7, 1997, "Therefore, this farm is not in violation." (R. at 301).

In 2001, plaintiff's equipment broke down, and the Logan County FSA again noted uncontrolled weeds on some of plaintiff's land subject to the PFC. On August 29, 2001, plaintiff was notified that her payment under the PFC program would be reduced by the amount of $11,448.00 for her failure to control weeds on 709.8 acres of her land.[1] Specifically, the letter stated:

Field maintenance spot-checks were completed on June 19, August 8, and August 14, 2001, on your land in Farm # 2557 with findings revealing that weeds were not being controlled on 709.8 idle contract (PFC) acres. Because these weeds are not being controlled on these idle PFC acres a violation has occurred....

A review of your PFC file for Farm # 2557 showed that on June 20, 1997, you were issued your first maintenance default violation warning letter concern-ing weeds not being controlled on 557.4 idle contract acres and given (15) days to remedy this problem.

This letter is to notify you that a second violation has occurred whereby weeds are again not being controlled to prevent weed seed production ....the County Committee has determined that a payment reduction of $11,448 will be assessed against your share of Farm # 2557 for this subsequent violation. Furthermore, you will have (15) calendar days from the date of this letter to remedy this problem to avoid further payment reductions....

(R. at 369.)

The County Committee reached the figure of $11,448 as follows. In 2001, the normal cost in Logan County to maintain weeds was $7 per acre. That year, the PFC payments for the farm plaintiff owned part of totaled $34,343. Plaintiff received $22,987 for her 2/3 share. In determining that $11,448 was owed, the FSA began with the standard calculation (709.8 acres × $7 COC established rate × 3 = $14,906). It found this to be plaintiff's "second maintenance default violation," and applied the rule that "the producer is assessed a payment reduction not to exceed 50% of the farm's total PFC payment" for the year. It then assessed approximately two-thirds of half the total PFC payments for 2001 in accordance with plaintiff's 2/3 ownership of the farm (half of $34,343 = $17,172 × .6667 share = $11,448).

Soon thereafter, plaintiff remedied the problem and no further payment reductions were made. Plaintiff appealed the FSA's decision to reduce her payments to the Kansas State Farm Service Agency Committee. That committee affirmed the decision that plaintiff was in violation for

---

1. At that time, plaintiff had a farm total of 2,513.4 PFC acres. R. at 334.

failing to control weeds, but found the amount of her payment reduction should be $14,906.[2] This amount is greater than that assessed by the County because the state committee found that the amount of the payment reduction should not have been reduced by one-third to reflect plaintiff's 2/3 ownership of the farm. (R. at 16–17.)

Plaintiff appealed the state agency's decision to the National Appeals Division, where the hearing officer affirmed the state agency's decision and the assessment of a payment reduction of $14,906. (R. at 844–850.) Thereafter, plaintiff appealed the hearing officer's decision to the Director of the National Appeals Division, but without success. (R. at 840–843.) Plaintiff filed this case seeking judicial review of the Director's final order that she had failed to control weeds, that she had thereby violated the contract, and that her payments pursuant to the PFC should thus be reduced by $14,906 for 2001.

## SCOPE OF REVIEW

■ This court has jurisdiction to review the agency action in this case. *See* 7 U.S.C. § 6999; *Payton v. U.S. Dept. of Agriculture,* 337 F.3d 1163 (10th Cir.2003). This court's review is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), which authorizes this court to set aside agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to determine whether the agency examined the relevant evidence and articulated a rational connection between the facts found and the decision made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct.

2856, 77 L.Ed.2d 443 (1983); *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1574 (10th Cir.1994)." *Payton,* 337 F.3d at 1168–69.

An agency's factual determinations will be set aside only if they are unsupported by substantial evidence. "The substantial-evidence standard does not allow a court to displace the [Agencies'] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Trimmer v. United States Dep't of Labor,* 174 F.3d 1098, 1102 (10th Cir.1999) (quotation marks and citations omitted). The appellant bears the burden of proof that an agency's factual determinations are not supported by substantial evidence. *Payton,* 337 F.3d at 1168–69.

Matters of law are reviewed de novo. *Trimmer,* 174 F.3d at 1102. When reviewing an agency's interpretation and implementation of the relevant Act, the court gives strict effect to the unambiguous intent of Congress if Congress has clearly spoken to the issue before the court. However, if Congress is silent on the issue and has delegated authority over the subject matter to the agency, the court defers to the agency's construction, unless, in context of the Act, its construction is unreasonable or impermissible. *Wyoming Farm Bureau Federation v. Babbitt,* 199 F.3d 1224, 1232 (10th Cir.2000) (citing cases).

## STATUTORY CONTEXT

PFC contracts are "seven-year contracts, administered by the Commodity Credit Corporation on behalf of the USDA, under which participants agree to subject eligible cropland to certain conservation

---

**2.** Payment reduction for a second violation is fixed at three times the cost to maintain an acre. Here, the cost to maintain weeds in plaintiff's county was determined to be $7.00 per acre. ($21 × 709.8 acres = $14,906.00)

and land-use restrictions in exchange for annual contract payments. 7 U.S.C. § 7211." *McBride Cotton and Cattle Corp. v. Veneman,* 290 F.3d 973, 977 (9th Cir.2002).

> ... Congress enacted the Federal Agriculture Improvement and Reform Act of 1996 ("FAIR Act"), Pub.L. No. 104–127, 110 Stat. 888, which replaced most crop subsidy programs under previous statutes with a new production flexibility contract ("PFC") payment program. Under the PFC program, the USDA pays fixed but declining amounts to eligible producers for a seven-year period. Under the FAIR Act, the USDA does not have discretion to withhold PFC payments or otherwise use those payments to control the ... decisions of farmers. The Act requires that the payments be made so long as the statutory prerequisites have been satisfied. *See* 7 U.S.C. § 7211(a).

*Sierra Club v. Glickman,* 156 F.3d 606, 611 (5th Cir.1998).

> The stated purpose of this law is:

> to authorize the use of binding production flexibility contracts between the United States and agricultural producers to support farming certainty and flexibility while ensuring continued compliance with farm conservation and wetland protection requirements.

7 U.S.C.A. § 7201(b)(1).

The Secretary of the USDA published regulations governing the policy and regulatory implementation for PFCs, the authority for which was delegated by Congress. Therefore, the regulations have "the force and effect of law." *Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977).

The regulations in effect during 2001 required producers who did not plant a crop on contract acreage to protect any such land from weeds and erosion. Specifically, the regulation in effect at the time provided:

> § 1412.401—Contract violations.

> Producers who do not plant a crop on contract acreage must protect any such land from weeds and erosion, including providing sufficient cover if determined necessary by the county committee. The first violation of this provision by a producer will result in a reduction in the producer's payment for the farm by an amount equal to 3 times the cost of maintenance of the acreage, but not to exceed 50 percent of the payment for the farm for that fiscal year. The second violation of this provision will result in a reduction in the payment for the farm by an amount equal to 3 times the cost of maintenance of the acreage, not to exceed the payment for the farm for that fiscal year.

§ 1412.401(b)(2)(c), 61 FR 37544, 37580, July 18, 1996, as corrected at 61 FR 49049, 49050, Sept. 18, 1996.

**ARGUMENTS**

Plaintiff contends that the Director erred in many respects, including failing to find that 1) the PFC contracts were void for vagueness; 2) the enforcement was discriminatory or in retaliation for her having previously reported the person who reported her violation; 3) the payment reduction constituted an illegal penalty; and 4) the payment reduction was unjust because this was her first violation on this farm or contract, and she had already paid the cost to remedy it.

**Void for vagueness**

■ Plaintiff claims that the regulations underlying the PFC contract are void for vagueness in failing to define terms such as "weeds" and to specify how to control them. The government claims that this issue is beyond the court's scope of review.

The court agrees. The void for vagueness doctrine raises a constitutional challenge. *See e.g., In re Stewart,* 175 F.3d 796 (10th Cir.1999).

It is generally considered that the constitutionality of Congressional enactments is beyond the jurisdiction of administrative agencies. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Johnson v. Robison,* 415 U.S. 361, 368, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

Further, the regulations governing the procedures for National Appeals Division (NAD) for the USDA preclude challenges to the statutes. *See* 7 CFR § 11.3(b) ("The procedures contained in this part may not be used to seek review of statutes or USDA regulations issued under Federal Law.") Accordingly, as the NAD Division Director advised plaintiff in his decision, NAD procedures may not be used to challenge a statute or regulation as void for vagueness. *See* R. at 842.

Because the posture of this case is on appeal from the decision of the NAD, the court's scope of review is narrow, as stated above. Any determination that the statute is void for vagueness is beyond this court's review of the action taken by the agency.

**Retaliation/Discrimination**

■ Plaintiff next contends that she was selectively prosecuted in retaliation for her previously having turned in a member of the county committee for a violation. As above, the government contends that this issue is beyond the court's scope of review, and notes that the national hearing officer advised plaintiff of the fact that discrimination claims are not within the scope of the agency's authority.

The hearing officer's decision states:

... the Appellant contends she is a victim of discriminatory and unequal enforcement since she was the only producer sited for not controlling weeds in 2001. Allegations of discrimination are beyond the scope of the hearing Officer's authority. However, if the Appellant and her representative wish to pursue these allegations, they should contact in writing the address indicated at the end of this determination.

R. at 845. The end of the decision not only stated an address where plaintiff could file a complaint of discrimination, but also stated the policy of the USDA prohibiting discrimination in all its programs and activities.

The court finds that issues of retaliation and discrimination were not within the issues properly before the agency, and they are thus are beyond this court's scope of review on appeal. *See Payton,* 337 F.3d at 1169–70 (the court has no basis for questioning the agency action on issues not presented in the agency proceeding).

**Payment Reduction as Penalty**

■ Plaintiff additionally asserts that the payment reduction is not a reasonable damages provision, but rather is an unenforceable penalty provision. Plaintiff's contention is that the amount she was assessed is cost-based, because it is determined based upon the "normal cost per acre in the county of the necessary action to correct the default" times three, times the number of acres involved. (R. at 564). Because plaintiff controlled the weeds on her land soon after her violations and paid the cost to do so herself, she believes that any reduction of her payments constitutes an illegal penalty.

The court disagrees. This is not a penalty provision. *See Varney Business Services, Inc. v. Pottroff,* 275 Kan. 20, 59 P.3d 1003 (2002) (a penalty is to secure performance and is not for payment of sum in lieu of performance); *Unified School Dist. No. 315, Thomas County v. DeWerff,* 6 Kan.App.2d 77, 78, 626 P.2d 1206, (1981)

(It is well settled that parties to a contract may stipulate to the amount of damages for breach of the contract). The agreement plaintiff signed made clear that if plaintiff did not comply with its terms, her payments would accordingly be reduced.

Plaintiff argues that the amount of payment reduction established in the contract is intended to reflect the cost to the county of controlling weeds, and since the county had no cost, no payment reduction is warranted. Although the cost in the county of controlling weeds is a factor in determining the amount of payment reduction, the intent of the contract is broader—to ensure continued compliance with farm conservation and wetland protection requirements by monetarily rewarding those who comply with the contract's terms and by withholding that payment in proportion to the producer's non-compliance with the contract. *See* 7 U.S.C.A. § 7201(b)(1). Because plaintiff failed to abide by her agreement to control weeds on contract acreage, the payments she otherwise would have received were properly reduced, in accordance with the terms of the contract and the law.

**Notice**

■ Plaintiff next contends that the 2001 violation was her first violation and that therefore she was entitled to a warning, rather than a payment reduction. The regulations do not require a warning letter. The PFC contract, however, provides for a warning of default, in stating:

> All producers sharing in PFC payments are entitled to 1 warning letter for the first default on each farm during the term of the contract.

(R. at 564).

Plaintiff asserts that a different farm or contract was involved in 1997 than in 2001, but that even if the same farms and contracts were involved in both those years, her first default was in 2001 since no violation was found in 1997. Thus she claims entitlement to a warning letter in accordance with the PFC contract.

**Different farms/contracts**

The 1997 letter related to farm serial number ("FSN") 2129, while the 2001 letter related to FSN 2557. The agency found that "appellant enrolled FSN 1777 into the AMTA program in 1996. FSN 1777, the parent farm, was reconstituted into FSN 2129, and subsequently into FSN 2557." (R. at 841; 16.) Plaintiff provides no record evidence from which the court could conclude that this analysis is erroneous.

The record shows that plaintiff signed separate papers in 1997 and 2001 when her land was reconstituted and her farm was given new serial numbers. Plaintiff does not dispute that substantially the same land was included in both agreements. *See* 7 CFR § 718.201 *et seq.* ("The constitution and identification of land as a farm for the first time and the subsequent reconstitution of a farm made hereafter, shall include all land operated by an individual entity or joint operation as a single farming unit ...") Instead, she contends that the contract she signed in 1996 is separate and distinct from the one she signed in 1999.

The court finds substantial evidence supporting the agency's finding that both the 1997 and the 2001 violations related to only one contract. *See* R. at 842. The fact that a farm is reconstituted, or certain land is sold, does not change the nature of the agreement under the PFC contract. Although plaintiff signed PFC agreements after 1996 when she first enrolled her land in the program, those are merely amendments to the original agreement, as they evidence only minor variations in the number of acres subject to the contract or the addition of a number of acres in the sorghum program, and reflect the reduced number of years remaining on the contract. *See* R. at 750, 751.

**First violation**

 Plaintiff additionally contends that the 2001 violation was her first, because: 1) no payment reduction was made pursuant to the 1997 letter; 2) the report dated July 7, 1997, by the farm service agent who conducted the drive-by inspection concluded, "this farm is not in violation;" (R. at 301); and 3) she had already controlled the weeds by the time she received the 1997 letter.

The state committee rejected this argument, stating:

The June 20, 1997 letter did constitute a valid first warning letter as the violation occurred upon the time the inspection was made and found uncontrolled weeds. The fact that Ms. Bishop had controlled the weeds when the letter was received is not material to the case. The violation had occurred at the time of inspection and the first warning was valid. Ms. Bishop did not dispute the warning at the time of issuance of the June 20, 1997, letter.

R. at 17.

Similarly, the NAD hearing officer rejected this argument in these words:

Agency Handbook procedures do not circumvent federal regulations. The governing regulations in this matter do not provide for a warning letter to be issued. The regulations clearly set forth that the first violation by a producer will result in a reduction in the producer's payment for the farm by an amount equal to 3 times the cost of maintenance of the acreage. Consequently, the Agency's decision is in compliance with the regulations.

R. at 847.

The record provides ample support for the factual finding that weeds were uncontrolled on the stated number of contract acres farmed by plaintiff in 1997. This alone is sufficient to constitute a violation. The fact that plaintiff had already controlled the weeds by the date she received the warning letter in 1997 is immaterial to the finding of a violation. Although the 1997 report of the farm service agent who concluded that plaintiff was not in violation adds confusion to the issue, the record does not reflect that plaintiff saw that report at any time prior to her administrative appeals of this matter, or that it is controlling on this issue.

Lastly, the fact that no payment reduction was made in 1997 does not compel the conclusion that no violation occurred, as warnings of violations routinely gave producers 15 days (or more if requested) to control the weeds in a manner that would ensure that the seed would not spread to other acreage before PFC payments for the farm would be reduced. *See* R. 17–184 (providing sample letter for the first weed control default).

In conclusion, the court has carefully examined each claim of error raised by the plaintiff, and finds no basis for reversal.

IT IS THEREFORE ORDERED that the final decision of the USDA is affirmed.