**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 12, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ERMIN KRESO, M.D.,

      Plaintiff - Appellant,

v.

ROBERT A. MCDONALD[*],
Secretary, United States Department
of Veterans Affairs; UNITED
STATES VETERANS
ADMINISTRATION,

      Defendants - Appellees.

No. 14-1455
(D.C. No. 1:11-CV-02378-REB)
(D. Colorado)

---

**ORDER AND JUDGMENT**[**]

---

Before **TYMKOVICH,** Chief Judge, **MURPHY**, and **BACHARACH**, Circuit
Judges.

---

[*]Pursuant to Fed. R. App. P. Rule 43(c)(2), Robert A. McDonald is
substituted for Eric Shinseki as Secretary for the U.S. Department of Veterans
Affairs.

[**]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I.    Introduction

Plaintiff-Appellant, Ermin Kreso, M.D., sought judicial review of the decision of a Disciplinary Appeals Board ("DAB") to terminate his employment. He asserted the DAB's findings of fact underlying its decision were not supported by substantial evidence and the discharge proceedings were not conducted in conformity with applicable laws and regulations. Kreso also argued the DAB's decision was arbitrary and capricious because the severity of the penalty it imposed was unnecessarily harsh. The district court considered Kreso's arguments but denied relief. Kreso then brought this appeal.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 38 U.S.C. §7462(f), this court **affirms** the ruling of the district court.

## II.    Background

In October 2006, Kreso was hired by the United States Department of Veterans Affairs (the "VA") to fill a staff physician position at the Denver VA Medical Center ("VAMC"). He was serving in that position in May 2009 when the Medical Center Director, Lynette Roff, appointed an Administrative Investigation Board ("AIB") to investigate reports of misconduct. At the conclusion of the investigation, Kreso received a memorandum informing him of his proposed discharge. Evidence upon which the AIB relied in reaching its recommendation was attached to the memorandum and Kreso was given fourteen days to respond to the allegations in the memorandum. Kreso requested

-2-

additional documentation from the VA. In the response he filed on November 27, 2009, Kreso requested permission to file a supplement after he received that documentation. Kreso supplemented his response on January 15, 2010, but again asserted he had not received all the information he requested.

After considering Kreso's written and oral presentations, Roff sustained four of the charges in the Proposed Discharge Memorandum and terminated Kreso's employment. Kreso appealed his termination. The DAB held a three-day hearing in October 2010 to consider the appeal. It sustained three of the charges against Kreso and also sustained the decision to impose the penalty of discharge. The DAB's decision was approved by the Principal Deputy Under Secretary for Health on March 17, 2011. Kreso then filed a complaint with the United States District Court for the District of Colorado, seeking judicial review of the decision to terminate his employment with the VA. The district court affirmed the decision of the DAB and Kreso has appealed from that ruling.

## III. Discussion

### A. Standard of Review

This court reviews a district court's decision upholding agency action *de novo*, applying the same standard applied by the district court. *Lee v. U.S. Air Force*, 354 F.3d 1229, 1236 (10th Cir. 2004); *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1168-69 (10th Cir. 2003). The standard applicable to decisions of the DAB is set out in 38 U.S.C. § 7462(f)(2) and is highly deferential. The DAB's

decision can be set aside by this court only if it was (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," (2) "obtained without procedures required by law, rule, or regulation having been followed," or (3) "unsupported by substantial evidence." 38 U.S.C. § 7462(f)(2).

   B.   *Evidence Supporting the DAB's Decision*

   Kreso argues, as he did before the district court, that the DAB's findings were not supported by substantial evidence. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 478 (10th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Kreso challenges the findings that he (1) failed to attend to three patients in need of care, (2) neglected a patient by delaying care, and (3) engaged in disruptive behavior.

   As to the charge that Kreso failed to attend to patients, the record confirms that a patient arrived in the emergency department ("ED") on the evening of May 11, 2009, complaining his catheter was not draining. The progress notes indicate the patient was not examined by Kreso but nevertheless was discharged at Kreso's instruction. Because the patient was triaged as a level 3, ED policy required Kreso to see him before he was discharged. There was evidence Kreso was aware of this policy.

A second incident occurred on May 10, 2009, when a patient arrived in the ED from Salt Lake City with a request for overnight lodging. According to Kreso, the patient did not bring sufficient oxygen supplies with him and was nearly out of oxygen when he arrived at the ED. The patient was directed to call a local medical supply company and have oxygen delivered to him. While the patient was using the telephone, a nurse observed that he was having difficulty breathing and told this to Kreso. Evidence in the record indicates Kreso refused to provide the patient with oxygen until his supply arrived, stating that he would provide care if the patient either collapsed or checked himself into the emergency room. The administrative officer on duty eventually arranged for the patient to receive oxygen until his supply could be delivered by the private medical supply company. Although the Denver VAMC requires patients seeking overnight lodging to furnish their own medication, the lodging policy also states that ED personnel are responsible for providing any urgent medical care required by a lodger. Based on the statements of the nurse and a police officer who assisted the patient, the DAB found that the patient required urgent medical care and Kreso refused to provide it.

The third incident involved a patient who arrived at the ED complaining of the inability to sleep due to coughing, congestion, and a sore throat. Kreso discharged the patient with a diagnosis of "likely chronic sinusitis with post nasal drip in the setting of obesity/weight gain." The patient testified at the DAB

hearing that Kreso's examination was cursory and incomplete, in part because Kreso did not listen to all five lobes of his lungs.[1] The patient also testified that Kreso told him several times there was nothing wrong with him and, as he was leaving, told him not to return to the ED because "there was nothing wrong with [him] and [he] was abusing the system." Based on this testimony and its credibility determinations, the DAB found, contrary to Kreso's admonition to the patient, that the patient's visit to the ED was legitimate and there were "grounds for concern" over the thoroughness of the physical examination performed by Kreso.

The charge that Kreso neglected a patient by delaying care arose from an incident in which Kreso changed the triage level of a patient from 3 to 4. Because of this change, the patient was seen by a nurse practitioner, not an MD, and he was required to wait four hours. Although Kreso denied changing the patient's triage level, an ED nurse testified before the AIB that she assigned the patient to level 3 and she recalled arguing with Kreso over the change he made. After considering this testimony and the patient's medical history, the DAB found that "[m]ost physicians would consider that [the patient] was placed at some risk due to the delay in his being seen."

The charge of disruptive behavior stemmed from a confrontation between Kreso and Judy Cooley, an employee at the Denver VAMC. In her written

---

[1]Until 2003, this patient worked as a registered nurse.

-6-

witness statement, Cooley stated Kreso approached her twice on October 22, 2009, asking to discuss scheduling issues. When Cooley told him she would not have the discussion without another physician present, Kreso insisted she speak to him and, according to Cooley, "stepped into [her] personal space" and blocked her path. Kreso followed Cooley into her office but left when she picked up the phone to call Dr. Don Weinshenker, the associate chief of staff for ambulatory care. Cooley's account of the confrontation was corroborated by a written report submitted by Dr. Nancy Franzoso who witnessed the incident. Franzoso stated that Kreso blocked Cooley's way and spoke to her very "aggressively." She described the incident as a "disturbing interaction" and was concerned enough to relay the information to the clerk at the main desk as she departed the hospital "so that other staff could help if necessary." Kreso admitted he and Ms. Cooley had a "heated discussion" that ended when Cooley indicated she was calling Weinshenker.

In its order, the district court thoroughly discussed each of these charges and addressed all of the arguments Kreso has repeated in his appellate brief. For substantially the reasons stated by the district court, we conclude there is substantial evidence supporting the DAB's findings as to all of the charges sustained by the DAB.

## C. Penalty Determination

Kreso argues the penalty imposed by the DAB—termination—was arbitrary and capricious. This court will uphold the decision to terminate Kreso if we determine the DAB "examined the relevant data and articulated a satisfactory explanation for [its] decision, including a rational connection between the facts and the decision made." *MacKay v. DEA*, 664 F.3d 808, 817 (10th Cir. 2011) (quotation omitted). As he did before the district court, Kreso asserts the DAB failed to properly consider the factors set out in *Douglas v. Veterans Administration,* which are applicable to appeals to the Merit Systems Protection Board. *See* 5 M.S.P.B. 313, 331-32 (1981) (establishing twelve nonexclusive factors to be considered by an agency before imposing a disciplinary penalty on an employee). The district court fully considered this argument, noting the *Douglas* factors are not binding on the DAB but were nevertheless considered as part of the termination decision. Based on that analysis and the regulatory guidelines of the VA, the DAB concluded Kreso "demonstrated a pattern of behavior exemplifying disregard for established written or verbal procedures and "lacked recognition of the seriousness of his actions and demonstrated a lack of sensitivity to the need for ED procedures." For substantially the reasons stated by the district court, we conclude the DAB's decision to terminate Kreso was not arbitrary and capricious because there is rational connection between the facts found by the DAB and the decision it made to terminate Kreso's employment.

*D.      Procedural Due Process*

Kreso also argues the proceedings before the DAB were not conducted in accordance with applicable VA procedures or the Due Process clause of the United States Constitution.  He claims he was denied an opportunity to confront the witnesses and the evidence against him and was prohibited from calling witnesses who could allegedly have provided favorable testimony.

An agency must comply with its own procedural rules but its interpretation of those rules is entitled to deference.  *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 738 (10th Cir. 1993).  This deferential standard does not apply to the question of whether an agency violated an individual's constitutional right to due process, a question this court reviews de novo.[2]  *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted).

---

[2]The Government construes Kreso's opening brief to raise only a constitutional due process argument.  In his reply brief, Kreso neither challenges nor concedes that interpretation.  Kreso's briefing is ambiguous and he does not specifically identify any particular VA rule or regulation.  Because Kreso has failed to show prejudice, his due process claims fail even under the more stringent standard applicable to constitutional claims.  Thus, under the unique facts of this case, it is unnecessary to adopt the Government's position.

Kreso asserts he was not allowed to cross-examine witnesses Patricia Lyman, Sylvia Murray, Karla Perkins, Kim Ator, Michael Blieden,[3] Francis Keffler, Mark Phillips, Carlos Montoya, and Ann Jodway to expose "their inconsistencies, and bias." Kreso does not explain who these witnesses are, at what stage in the proceedings they testified, or what he believes to be their alleged inconsistencies and biases. In discussing this claim, the district court concluded several of these witnesses did not testify at the DAB hearing either because Kreso successfully had them removed from the witness list or because Kreso made no effort to obtain their testimony at the hearing. In his opening brief, Kreso does not identify the efforts he undertook to call the remaining individuals as witnesses at the DAB hearing, or how any such efforts were thwarted by the VA. *See West v. Grand Cty*, 967 F.2d 362, 369 (10th Cir. 1992) (holding a due process claim failed because the plaintiff did not seek to require a witnesses's attendance at a post-termination grievance hearing and was not "inhibited or restricted from doing so"). In his reply brief, however, Kreso asserts he supplied the VA with a witness list and the VA was responsible for securing the attendance of any witness on that list who was employed by the VA. Kreso references a letter his counsel sent to the chairperson of the DAB in which

---

[3]Although Kreso persists in identifying Michael Blieden as a witness he was unable to cross-examine, he does not challenge the district court's finding that Blieden testified at the DAB hearing and was, in fact, cross-examined by Kreso's counsel. The district court's finding is definitively confirmed by the record, exposing Kreso's argument as mendacious.

he requested that the VA make seven individuals available at the hearing.[4]  Of the seven names included in Kreso's letter, only Ann Jodway is also mentioned in Kreso's appellate briefing.  Although Kreso argues he was denied the right to cross-examine Ms. Jodway to expose her biases, he does not identify any statements she made to the AIB or the DAB and it appears he, instead, considered her a character witness.  *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513-14 (10th Cir. 1990) (setting out the well-established rule that this court does not sift through the record to find evidence supporting a party's position).  This court does not engage in speculation.  Kreso's due process argument as to Ms. Jodway fails because he has wholly failed to present any meaningful argument that this court can address.  *See Meder v. Okla. City*, 869 F.2d 553, 555 (10th Cir. 1989) (holding due process claim failed because plaintiff failed to explain "how confrontation and cross-examination would have changed the" outcome of his hearing), *abrogated on other grounds by Am. Mfrs Mut. Ins. Co v. Sullivan*, 526 U.S. 40, 59 (1999).

Kreso also identifies Dr. J. Brian Hancock, the Chief of Staff at the Fargo VAMC, as another individual he was denied the right to effectively cross-examine.  Dr. Hancock was not a witness before the AIB or the DAB, but

---

[4]The September 29, 2010, letter references two other witness lists.  One is an initial witness list dated June 24, 2010; the second is an initial witness list dated July 12, 2010.  The names on both lists are identical.  Ms. Jodway is the only individual identified in Kreso's opening brief who appears on all three witness lists but who was not specifically discussed by the district court.

prepared a peer review memorandum at the request of Ms. Roff to assist her in determining whether to terminate Kreso. Kreso asserts this memorandum was new and material evidence that he was not given the opportunity to review. The record, however, confirms the document was sent to Kreso's counsel on September 29, 2010, more than two weeks before the DAB hearing began. Kreso has failed to direct this court to any record evidence indicating he requested the opportunity to cross-examine Dr. Hancock after he became aware of his report.

Kreso also argues generally that he was denied the right to review "documents, transcripts, and other memoranda." He does not specifically identify any of these materials. He does, however, complain that he was denied the opportunity to review the complete medical records of the patients presenting to the ED for care. Because Kreso has not explained how, or even if, the DAB relied on these patient records, his due process argument fails.

## IV. Conclusion

This court **affirms** the judgment of the district court for substantially the reasons stated by the court in its revised order dated September 9, 2014.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

-12-